IN THE MATTER OF UNITED STATES OF AMERICA (PLAINTIFF) AGAINST
ARNOLD MAURICE BENGIS, JEFFREY NOLL, AND DAVIS BENGIS
(DEFENDANTS) [CASE S1 03 CR. 308 (LAK)]

**Background**

1.  I am Professor Jan Glazewski in the Institute of Marine and Environmental Law at the
    University of Cape Town. I am the author of the leading textbook on environmental law
    in South Africa and have been teaching, publishing and researching in the area of marine
    law and environmental law for the past 18 years. My resume is attached.

2.  I have been provided with two opinions relating to the above matter. The gist of the first
    opinion by Marius Diemont (the Diemont opinion) is that the South African government
    exercises exclusive control of marine living resources in South African waters and for
    this reason is entitled to claim ownership. The second opinion by Advocate Gilbert
    Marcus (the Marcus opinion) focuses on a narrower question, that is, whether the South
    African government is the owner of fish caught illegally in South African waters.  The
    Marcus opinion does not address the question of whether the South African government
    can claim restitution for losses resulting from the illegal capture of fish in its waters, in
    this case the exclusive economic zone.

3.  Having considered the substance of both opinions, I am of the view that while the Marcus
    opinion concludes correctly that the State is not the owner of the West and South Coast
    Rock Lobster caught illegally by Hout Bay, this does not detract from the fact that the
    South African Government is entitled to claim restitution for losses resulting from the
    illegal capture of the resources in question in South African waters as argued in the
    Diemont opinion. It must be emphasised that the Marcus opinion does not attempt to state
    that South Africa cannot claim restitution for losses caused to its fish stocks.

4.  The proper question to be determined is whether there is a basis for South Africa, as
    victim, to claim restitution. In my view the South African government can claim for such
    restitution for the reasons set out below.

**International Law**

5.  The 1982 UN Convention on the Law of the Sea (UNCLOS) allows coastal states to claim 200 nautical mile Exclusive Economic Zone (EEZ). In the EEZ coastal states have sovereignty over the exploitation and conservation of living marine resources. The relevant article states:

> Article 56 RIGHTS, JURISDICTION AND DUTIES OF THE COASTAL STATE IN THE EXCLUSIVE ECONOMIC ZONE
>
> 1. In the exclusive economic zone, the coastal State has:
>
> (a) sovereign rights for the purpose of exploring and exploiting, conserving and managing the natural resources, whether living or non-living, of the waters superjacent to the sea-bed and of the sea-bed and its subsoil, and with regard to other activities for the economic exploitation and exploration of the zone, such as the production of energy from the water, currents and winds;

6.  South Africa ratified the LOSC on 5 December 1994.

**South African domestic law**

7.  South Africa has acted in conformity with its international rights by enacting the Maritime Zones Act 15 of 1994. Of relevance is section 7 which states:

> "7(1)    The sea beyond the territorial waters referred to in section 4, but within a distance of two hundred nautical miles from the baselines, shall be the exclusive economic zone of the Republic.
>
> (2)    Subject to any other law the Republic shall have, in respect of all natural resources in the exclusive economic zone, the same rights and powers as it has in respect of its territorial waters."

8.  It follows that the South African government has jurisdiction in its domestic law, over the exploitation and conservation of marine living resources in its 200 nautical mile exclusive economic zone.  It has exercised such jurisdiction for many decades in terms of a series of domestic sea fisheries statutes, the current one being the Marine Living Resources Act,

18 of 1998 (the MLRA). The South African government has apprehended and prosecuted innumerable fisheries poachers under this Act.

9.  It is accordingly not necessary in my view to establish whether the South African government owns the fish in question, or whether fish are *res nullius* or not. But in any event I am of the view that while the South African government is not the owner of the illegally captured fish, it is the custodian of the nation's fish resources under the doctrine of the Public Trust as elaborated on below.

**Doctrine of Public Trust**

10.  South African common law is based on Roman Law and Roman Dutch Law. As such there are three categories of things in South African law:
     a.  *Res Nullius* being things that are not owned but are capable of being owned, the topical example being fish and wild animals;
     b.  *Res omnium communes* being things that are owned by nobody and are not capable of ownership, examples being the air and the sea and sea shore in Roman law;
     c.  *Res Publicae* being things that are owned by the state but on behalf of the public at large, that is things which the state cannot market or trade in, but holds in trust for the people. In Roman law burial sites fell into this category and in Roman Dutch law the sea shore fell into this category.

11.  In my view the nations fishing resources as a whole and the ecosystem (as opposed to individual fish, which are *res nullius* in common law) are properly considered to be in the nature of Res Publicae. As such the state is the custodian of the marine living resources on behalf of the people of South Africa. This notion is the basis for the Water Services Act No. 108 of 1997 (see extract on the doctrine of public trust from the White Paper on a national water policy for South Africa. The full document can be downloaded from www.dwaf.gov.za/Documents/Policies/nwpwp.pdf  Alternatively, follow the links from www.dwaf.gov.za)

12. Moreover the principle of the Public Trust appears in the National Environmental Management Act No 107 of 1998 (NEMA). This is framework environmental legislation whose stated purpose is "To provide for co-operative environmental governance by establishing principles for decision-making on matters affecting the environment, institutions that will promote co-operative governance and procedures for co-ordinating environmental functions exercised by organs of state; to provide for the prohibition, restriction or control of activities which are likely to have a detrimental effect on the environment; and to provide for matters connected therewith". (Long Title.) Section 2 of NEMA provides that:

> "2.   Principles.—(1)  The principles set out in this section apply throughout the Republic to the actions of all organs of state that may significantly affect the environment and— ...
>
> (4)  (a)  Sustainable development requires the consideration of all relevant factors including the following: ...
>
> (vi)     that the development, use and exploitation of renewable resources and the ecosystems of which they are part do not exceed the level beyond which their integrity is jeopardised;...
>
> (o)     The environment is held in public trust for the people, the beneficial use of environmental resources must serve the public interest and the environment must be protected as the people's common heritage."

13. The "environment" is defined in section 1 of NEMA to mean:

> "the surroundings within which humans exist and that are made up of—
>
> (i)      the land, water and atmosphere of the earth;
>
> (ii)     micro organisms, plant and animal life;
>
> (iii)    any part or combination of (i) and (ii) and the interrelationships among and between them; and

        (iv)     the physical, chemical, aesthetic and cultural properties and conditions of the foregoing that influence human health and wellbeing;"

14. In the light of the above I am of the view that control of all marine living resources vests exclusively in the South African Government, as set out in the Diemont opinion. South Africa derives this control of natural resources in terms of both domestic legislation (Maritime Zones Act; the National Environmental Act; and the Marine Living Resources Act) and international law (the Law of the Sea Convention). Moreover such control is for the benefit of its people under the Doctrine of Public Trust.

15. Accordingly South Africa is entitled to restitution.

Professor Jan Glazewski
Institute of Marine and Environmental Law
University of Cape Town

## DOCTRINE OF PUBLIC TRUST -  AS EXTRACTED FORM THE GOVERNMENT WHITE PAPER FOR THE NEW WATER LAW

### 5.1.2. Public trust

The recognition of Government's role as custodian of the public trust in managing, protecting and determining the proper use of South Africa's scarce water resources (Principles 12 and 13) is a central part of the new approach to water management. As such it will be the foundation of the new water law.

The main idea of the public trust is that the national Government has a duty to regulate water use for the benefit of all South Africans, in a way which takes into account the public nature of water resources and the need to make sure that there is fair access to these resources. The central part of this is to make sure that these scarce resources are beneficially used in the public interest.

Traditionally, the public trust has protected the public's reasonable access to water, including for example, the right of the public to gain access to rivers for recreational use such as canoe portage. While South African courts have historically taken a very narrow view of these public rights, renewed commitment by Government to its public trust obligation means that South African law will return to its source and adopt a broad purposeful understanding of the public's rights.

The national Government is committed to carry out its public trust obligations in a way which:

- guarantees access to sufficient water for basic domestic needs;

- makes sure that the requirements of the environment are met;

- takes into account the interconnected nature of the water cycle - a process on which the sustainability and renewability of the resource depends;

- makes provision for the transfer of water between catchments;

- respects South Africa's obligations to its neighbours; and

- fulfils its commitment as custodian of the nation's water.

The public trust therefore addresses the responsibilities of national Government in managing and protecting water resources and regulating the use of water. It will be a central concept of the new Water Act.

The idea of the public trust is not a new one to South African law. It is based in Roman law from which South African property law descends, where it was generally used to determine rights in rivers, the sea and the seashore.

The public trust is also an internationally accepted concept. In the United States, for example, the courts have overturned private water rights in order to protect inland water resources, such as lakes, on the grounds that water remains subject to the public trust. This confirms the development of the Roman law principle of the public trust, that the public trust is not just about

the state's power to use public property for public purposes, but also about the state's duty to protect the people's common heritage of rivers, streams, lakes, marshlands, tidelands and the sea-shore.

To make sure that the values of our democracy and our Constitution are given force in South Africa's new water law, the idea of water as a public good will be redeveloped into a doctrine of public trust which is uniquely South African and is designed to fit South Africa's specific circumstances.

In its role of guardian of our nation's water resources national Government will keep the right to influence the country's economic and social development - for the benefit of present and future generations - through the responsibility for determining the proper use of the nation's water resources.

In allocating water in the public interest, national Government must consider the planning and development of water resources in a manner which ensures the efficient, equitable and sustainable use of the resources. The public trust doctrine will, therefore, need to be sufficiently flexible to adjust to the ever-changing nature of our water resources and the evolving socio-economic demands placed on them. It is for this reason that the policy is that water allocations should be time limited.

The public trust doctrine, the new system of the Reserve and the allocation of water use licences will form an integrated system in the new water law (see Section 6.2).

In allocating water resources in the public interest, the Government cannot be bound by past decisions which may be inappropriate in the light of current knowledge or inconsistent with current needs. This is particularly so in South Africa where the apartheid past has resulted in inefficient and inequitable water use which violates the Government's public trust duty to ensure that water in used beneficially in the public interest. The national Government will have the power, in its capacity as public trustee, to reconsider previous allocation decisions.

The Constitution provides national Government with the sole responsibility for the management of water resources, although responsibility for certain water use sectors (such as agricultural and municipal use) and certain conservation and pollution control functions are concurrent provincial competencies. The concept of public trust is binding on all spheres of Government.

### 5.1.3. Water and Property Rights

The governance of water use has always, in a constitutional sense, been subject to the notion that the Government retains the right to regulate the country's economy and the nation's future, by reserving to itself the responsibility of determining the proper use of the country's natural resources.

Water use allocations claimed under the Water Act of 1956 and the common law codified in that Act may be recognised in the new law to the extent that these are allocations recognised as being beneficially used in the public interest. Existing uses are inherently limited by our present common law system to the amount of water beneficially used in the public interest. Claims, allocations and uses which are not beneficial in the public interest, have no basis in the common law, nor will they be recognised under the new law.

The new water law shall provide for the regulation in the public interest of all existing claims and future allocations. To the extent that future allocations, redressing the results of past racial discrimination, result in the reduction of existing valid allocations, these reallocations will be protected by the Constitutional provisions for corrective action which specifically recognise the right of the Government to establish such legislative programmes.

## CURRICULUM  VITAE

### JAN IGNACY GLAZEWSKI

**DATE AND PLACE OF BIRTH:** 19 August 1953, Paarl, South Africa

**IDENTITY NUMBER** 530819 5052 081

**UNIVERSITY EDUCATION**
UNIVERSITY OF CAPE TOWN      BCom LLB 1972-1976
UNIVERSITY OF LONDON      LLM 1978-1979
(London School of Economics & Political Science)
UNIVERSITY OF CAPE TOWN      MA (Environmental and
     Geographical Science) 1986

**POSITION  AND ACTIVITIES**
Professor in the Institute of Marine and Environmental Law, University of Cape Town.
Employed at University of Cape Town since October 1985

Lecture, supervise research and give seminars at post-graduate level in the Faculty of Law in Environmental Law, International Environmental Law, Coastal Zone Law and related subjects including components of Marine Pollution Law and International Fisheries Law.

Special Advisor to Minister of Environmental Affairs & Tourism April 2003 to May 2004
(Special Leave from UCT until 31 May 2004)

Main publication: "Environmental Law in South Africa" Butterworths (911pp) 2000.

**PREVIOUS   EMPLOYMENT**
DEPARTMENT OF INLAND REVENUE, PRETORIA
Jan 1977 - Aug 1978 and Jan 1980 - Oct 1980  (In between postgraduate student London University )
Legal Officer in terms of a Civil Service bursary obligation

BELL DEWAR AND HALL: ATTORNEYS, NOTARIES AND CONVEYANCERS
JOHANNESBURG      Nov 1979 - Feb 1982
Articled Clerk and Professional Assistant

ARTHUR ANDERSEN, CHARTERED ACCOUNTANTS - CAPE TOWN
March 1983 - Feb 1984.  Legal Advisor in the Tax Division

COUNCIL FOR SCIENTIFIC AND INDUSTRIAL RESEARCH
UNIVERSITY OF CAPE TOWN   1985
Grant-holder during further post-graduate studies in Environmental & Geographic Science
Researched and reported on the use of financial incentives in environmental protection

GOVERNMENT OF NAMIBIA (1995-1996)
Granted special leave from UCT and seconded to the Ministry of Environment and Tourism in Namibia managing an on-going project to review and revise Namibia's environmental laws

**NRF RESEARCH RATING**
During 2002 the National Research Foundation (NRF) introduced an internationally peer-reviewed research rating system for social scientists and humanities. I have been rated category B2 which is described in the NRF definition of Rating Categories as:
"All or the over-riding majority of reviewers are firmly convinced that the applicant is an independent researcher enjoying considerable international recognition for the high quality and impact of his/her research outputs"

**AWARDS AND PRIZES**
University of Cape Town 2002 Book Award for Environmental Law in South Africa, Butterworths, Durban

**GUEST LECTURES**
World Summit on Sustainable Development; Toast it or trash it?  Address to Western Cape Branch of the South African Institute of International Affairs, September, 2002

**MAIN PUBLICATIONS**
**Books**
- Environmental law in South Africa, Butterworths, Durban 2000 (909pp)
- Environmental Justice and the Legal Process (Editor with G Bradfield) Juta & and Co 1999.

**Chapters in Books**
- "Environment" chapter 19 (pp 409 to 428) in Cheadle, Davis and Haysom, South African Constitutional Law, Butterworths, 2002.
- The Rule of Law: Opportunities for Environmental Justice in the New Democratic Legal Order, chapter 7 in Environmental Justice in South Africa, ed. David A McDonald.  Ohio University Press (Athens), University of Cape Town Press (Cape Town) 2002.
- Environmental Rights and the New South African Constitution, in Human Rights Approaches to Environmental Protection, Anderson & Boyle (Eds), OUP, (1996) 177-197.
- Co-author of the following three chapters in  Fuggle and Rabie Environmental Management in South Africa (1993):
    - "The Coastal Zone" (with A Heydorn & B Glavovic).
    - "Off-shore Mining" (with J Gurney & M Kirkley).
    - "Marine Systems" (with J Field).
- The Oceans - Our Common Heritage with (Francis Manuel) Chapter 10 in Going Green - People, Politics and the Environment, J Cock & E Koch (Eds), Oxford University Press, Cape Town, (1991) 193.

**Articles**
- With Emma Witbooi, 'The Impact of Environmental Legislation on the Property Lawyer' in Butterworths Property Law Digest.Vol.5, Part 1, Feb 2001, 3-9.
- Environmental Justice and the new South African democratic legal order, Acta Juridica (1999)1.
- With G Kamseb, The Protection of Wilderness in Namibian Law, In Proceedings of the Wilderness Management Symposium, Waterberg Plateau Park, Namibia, June 1996, p183-188.
- With Francois Du Bois, "The Bill of Rights and the Environment" in  Bill of Rights Compendium, Section 2 Public Law, Part B, Butterworths, 2B1-2B100 (1997)
- Towards a Coastal Zone Management Act for South Africa (1997) 4(1) South African Journal of Environmental Law and Policy 2-22.
- The Environment and the new Interim Constitution, (1994) 1(1) South African Journal of Environmental Law and Policy  3-16.
- An overview of international law and the South African law relevant to plutonium shipments (1994) 49(2) Transactions of the Royal Society of South Africa 237-246.
- Environmental provisions in a new South African Bill of Rights (1993) 37(2) Journal of African Law 177-184.
- Regulating transboundary movement of hazardous waste:international developments and implications for South Africa (1993) 26(2) Comparative and International Law Journal of Southern Africa

- Legal issues surrounding the use of driftnets: a South African perspective (with P Vrancken) (1993) 8(1) SA Public Law 21-35.
- The Situation of Waste Management and Pollution Control in South Africa. Legal aspects report to the Department of Environment Affairs by the CSIR Programme for the Environment, Pretoria. Report CPE 1/91, 417pp (1991).
- Current and future directions in SA environmental law (1991) Strategic Review for Southern Africa 13 (1) 12-35.
- The Regulation of Whaling in International and South African Law (1990/91) 16  South African Yearbook of International Law 61-80.
- The Evolution of Public Policy with Regard to the Environment: a legal perspective over the last fifty years' with MA Rabie SA Journal of Science Vol 86 (7-10) July - October 1990, 413-419.
- Planning and legal responses to sea level rise in South Africa with MR Sowman, SA Journal of Science Vol 86 (7-10) July - October 1990, 294-298.
- The Environment, Human Rights and a New South African Constitution, (1991) 7(2) South African Journal for Human Rights 167-184.
- The International Law of the Sea and Legislation (two chapters in booklet) Marine Science and Technology in South Africa. J F Herbst (Ed). FRD, p12 & p63, 1990.
- A new Environment Conservation Act: An awakening of Environmental law? De Rebus, 263, Nov. 89, 872-875.
- The evolution of public policy with regard to the environment: a legal perspective over the last fifty years (with MA Rabie) 1990 (Jul-Oct) (86[7-10]) SA Journal of Science 413-419.
- African Wildlife : Legal Column "Conservation  and the Law" during 1989.
    - "The Kruger Park Conference and the Environment Conservation Bill" Vol 43(1) 13.
    - "Acid Rain - Cloudy Law" Vol 43 (2) 81.
    - "Coastal Zone Mining Law" Vol 43 (3) 123.
    - "Atmospheric Pollution and the Ozone Layer: plugging holes in International Law" Vol 43 (4) 174.
- The control of South Africa's living marine resources (with M A Rabie and J Grindley) 1986 Acta Juridica 133.
- The Admiralty Reserve - An Historical Anachronism or Bonus for Conservation in the Coastal Zone? 1986 Acta Juridica 193.

**Reports**

- (assisted by Emma Witbooi) Recommendations for the implementation of International Ballast Water Guidelines into South African Law  Final Report: A co-operative initiative of the Global Environmental Facility, UNDP and the International Maritime Organisation, November 2001
- Report to Chairman of the Board of the NBI on Research and Licence Licence Agreement between the National Botanical Institute and the Ball Horticultural Company, July 2001, www.uct.ac.za/depts/pbl/imel/pbl514f.htm
- (Grant holder: Jan Glazewski, Research Assistant Emma Witbooi) Biodiversity and the law: legal issues arising from the implementation of the Convention on Biological Diversity into South African law, National Research Foundation (15/1/3/160261), March 2001.
- (with M Sowman) Institutional and Legislative Context and Capacity for Formulating and Implementing the Coastal Management Policy, in White Paper for Sustainable Coastal Development in South Africa, Department of Environment Affairs and Tourism Coastal Mangment Policy Programme, April 2000
- (with Dr M Sowman) Review of Legislative and Institutional Arrangements for Coastal Policy in South Africa, Coastal Management Policy Programme, 1998.
- Implications of the new Water Policy: problems and solutions. Proceedings of Conference held in Cape Town November 1998, Royal Society  of South Africa website: http://www.uct.ac.za/org/rssa/conferen/frstpg.htm.
- (with M Figueira and N Kangueehi) Legal approaches to protecting biodiversity in Namibia, in Biological Diversity in Namibia – a country study. P Barnard (ed) (1998). Windhoek: Namibian National Biodiversity Task Force 279-297.

## CONFERENCE PROCEEDINGS AND OTHER PUBLISHED PAPERS

- Towards Integrated Coastal Area Management: A case study in co-operative governance in South Africa and Australia, in Conference Proceedings: Piecing together the Legislative Jigsaw, Queensland Environmental Law Association, Annual Conference, Sunshine Coast, Australia, May 2002.
- The Implementation of the Convention on Biodiversity in South Africa: Problems and Possibilities. Paper presented at Network for Sustainable Develepoment (NESDA) Conference, Nairobi, April 2001.
- Poverty, Law and the Environment. Paper presented at World Summit Roundtable, DEA&T July 2001.
- (with Emma Dingle), 'Treasure Oil Spill – Legal lessons learnt. Paper presented at the Treasure Oil Conference on Wildlife Issues. Article can be found on the website: http://www.capenature.org.za/what_is_new/treasure/proceedings.html.
- (with S. Posnik) "International Standards and Expectations: Review of International Developments" The South African Institute of Mining and Metallurgy Colloquium: National Environmental Management Act - Implications for The Mining and Metallurgical Industry: Mintek, November 1999.
- "The National Environmental Management Act (107 of 1998) opportunities and constraints" in Conference Proceedings, Impact Assessment as related to poverty and development issues in southern Africa – what do we know and need to know? IAIAsa'99, Bloemfontein.
- Guest Lecturer Robben Island Training Programme - Heritage Management and Collections Management, February 1998.
- SANCOR Seminar "The New Marine Living Resources Act 18 of 1998 - a slippery fish?" at SFRI, July 1998.
- "Air pollution control: developments in the new democratic South Africa", NACA (National Association for Clean Air) 1997 Annual Conference, Iscor Club, Vanderbijlpark, November 1997.
- Conference of the Society of University Teachers of Law, University of the North, Pietersburg, July 1997 "Latest Developments in South African Environmental Law".
- The development of environmental assessment legislation in Namibia, South African Chapter of IAIA, Cape Town, 1996.
- Legal and Administrative Aspects, Food and Allied Workers Union - Fishing Conference, 28-30 January 1994, Cape Town.
- Environmental Rights, Lecture Series on Comparative Human Rights Law, The Centre for Human Rights, University of Pretoria, September 1993
- Constitutional Developments and Implications for Marine and Coastal Law'. 8th Southern African Marine Science Symposium `Marine Science for a Sustainable Future', Club Mykonos, Langebaan, October 1993.
- Environmental Provisions in a new South African Bill of Rights. Conference on Human Rights Approaches to Environmental Protection in the Commonwealth and Beyond. Commonwealth Institute and School of Oriental and African Studies, University of London, May 1993.
- Hazardous Waste Law, AIC Conference on Hazardous Waste Management, Johannesburg, March 1993.
- New Directions in South African Environmental Law, Integrated Environmental Management Conference, International Executive Communications, Johannesburg, February 1993.
- Environmental provisions in a new South African Constitution Environmental Law Conference, University of the Witwatersrand 1991.
- An overview of South African Environmental Law, Association of Legal Advisors of South Africa, Johannesburg 1991.
- The Environment, Human Rights and a New South African Constitution
- Man and the Environment Workshop (Co-operative Programme for Human Needs, Resources and the Environment) Human Science Research Council, Kruger National Park 1990.
- The Environment, Human Rights and a New South African Constitution
- Lawyers for Human Rights, Maccauvlei 1990.
- The Evolution of Public Policy with regard to the Environment. International Geosphere Biosphere Programme, UCT 1989.
- International Whaling Law, Extra Mural Studies and Adult Education, UCT 1988.
- Compensating landowners for environmentally motivated restrictions on land-use

Environmental Law Conference, Kruger National Park 1988.
- Building a new South Africa: Environment, Reconstruction and Development Vol 4, IDRC (1995) 220pp, `Environmental law: recommendations' and `Legislative framework and environmental law'.

**BOOK REVIEWS**
- Principles of International Environmental Law: Frameworks, Standards and Implementation by Philippe Sands, (1996) South African Law Journal 377-383.
- Environmental Laws of South Africa by PGW Henderson, (1997) 13(1) SAJHR 161-163.

**COMMITTEES AND EDITORIAL ACTIVITIES**
- Editorial Board, Journal of Environmental Law, OUP, UK, since January 2002.
- South African Reporter Yearbook of International Environmental Law, OUP, UK from 1993 to present day.
- South African editor Environmental Liability, UK since 1994 (lapsed 2000)
- Member of the legal sub-committee of the Council for the Environment 1989-1994.
- Appointed co-editor (with D J Devine) of Sea Changes, with effect from 1 January 1989.
- Editor The South African Journal of Environmental Law and Policy.

**CONSULTING AND OPINION WORK**
- Marine pollution law notes for International Oceans Institute (envisaged local capacity building courses) July 2000.
- Legal and Institutional input into White Paper on a Sustainable Coastal Policy for South Africa, July 2000 (with Dr M Sowman).
- Legal review of harbour pollution laws and administration for Cape Metropolitan Council, 1999.
- Legal opinion on environmental liability for private waste management consultant, 1999.
- Legal review of environmental laws applicable to proposed gas processing plant at Oranjemund, 1999.
- Participation in the formulation of a statutory board for the Eastern Cape Province, Department of Nature Conservation, 1998/1999.
- Legal opinion on the situation regarding penguins at Boulders Beach in Simonstown, 1998.
- Legal aspects of Integrated Pollution Control and Waste Management Policy, 1997, (White Paper on Integrated Pollution and Waste Management for South Africa: A policy on Pollution Prevention, Waste Minimisation, Impact Control and Remediation. N/1686 of 1998 in Government Gazette no 19161 dated 19 August 1998).
- Legal opinion for Rossing on "International law and domestic legislation relating to transportation of dangerous goods (uranium ore) by sea", 1998.
- Co-consultant with Dr Merle Sowman on Coastal Management Policy Programme - Legal and Institutional Specialist Study 1998; contribution to Coastal Policy Green and White Papers.
- Legal aspects of Integrated Pollution Control and Waste Management Policy, 1997.
- Legal aspects concerning the coastal zone of the proposed Table Mountain Park, 1997.
- Granted special leave from UCT (1995 & 1996) and seconded to the Ministry of Environment and Tourism in Namibia managing an on-going project to review and revise Namibia's environmental laws
- With DJ Devine - Marine Law and Environmental Law: Considerations relating to Mossgas Oil Refinery Project, UCT November 1994.

**ATTENDANCE AND/OR PAPERS PRESENTED AT INTERNATIONAL CONFERENCES**
- Recommendations for the implementation of International Ballast Water Guidelines into South African Law (with Emma Witbooi) Final Report: presented at the 1st International Workshop on the Legal Aspects of Ballast Water Management and Control, November 15/16 2001, World Maritme University, Malmo, Sweden.
- 'The role of contractual agreements in the conservation and utilisation of biodiversity: a case study". African Society of International and Comparative Law 11[th] Annual Conference, Harare, Zimbabwe, August 1999.
- International Trade and Environmental Responsibility, London, September 1998.

- Environmental law reform - the Namibian experience. Paper presented at National Workshop on Environmental Law Reforms in Zimbabwe - The Way Forward, March 1996, Harare, Zimbabwe.
- Human rights Approaches to Environmental Protection in the Commonwealth and Beyond. Organised jointly by the Commonwealth Institute, London and the School of Oriental and African Studies, London University, May 1993.
- Environmental Law Conference, UNCED Preparatory Conference, Rio de Janeiro, Brazil, 1991.
- International Law Association 63rd Conference, Warsaw, Poland 1988.
- International Conference on Pollution of the Marine Environment, Venice, Italy 1987.

**LOCAL CONFERENCES, WORKSHOPS PARTICIPANT AND OTHERS**
- Paper: 'Distinctive and Effective Principles of Environmental Law', Conference: Progressive Realisation of Ten Years of Democracy Celebration, Stellenbosch , June 2004.
- Training video: Sustainable development and litigation, Judges Training Course, Pretoria, January 2004.
- Lecture (with Emma Witbooi), IOI (International Ocean Institute) Marine Pollution Control component in Workshop on Train-Sea-Coast programme, Benguela Upwelling Systems, including course notes, December 2001.
- Lecture on Environmental Law on Natural Resource Management course, PLAAS (Programme for Land and Agrairan Studies), UWC, September 2000.
- Workshop on Legal Measures and Endangered Species, May 1999.
- Co-Convenor of Conference on Environmental Justice and the Legal System in conjunction with Zada Lipman of Macquarie University, Sydney, Australia, held at UCT, Cape Town, April 1998
- With DJ Devine, Pollution control law: South Africa Marine and Coastal Waters, Workshop, Centre for Marine Studies, University of Cape Town, November 1997.
- With Francois Du Bois, IAIA, Update in Environmental Law, Kwamaritane, September 1997.
- Environmental Conflict Resolution, De Hoop Nature Reserve, August 1997.
- National Forestry Action Programme, Forest Legislation Working Group, Workshop on Trends in International Resource Law, Pooks Hill Guest House, Midrand, April 1997.
- Workshop on Programme for Land and Agrarian Studies (UWC): Natural Resource Management: ways forward for South Africa. 'The role of legislation in NRM' , report on a course presented on behalf of LAPC, Houw Hoek Inn, Grabouw, February 1997.
- LAPC, Legal Issues Paper: Biodiversity, Braamfontein, January 1997.

**INTERNATIONAL AND NATIONAL COMMITEES**
- Member of the Board of the International Ocean Institute – Southern Africa Branch
- Member IUCN Environmental Law Commission
- Member of the International Council of Environmental Law, 2000 to present
- Member of the Board of the National Botanical Institute, 1999 to date.
- Former Chairman of the Haemophilia Foundation of South Africa
- Member of African Society of International and Comparative Law
- Member of NESDA: NAEL (Network of African Environmental Lawyers)

**CONTACT DETAILS**

Institute of Marine & Environmental Law          Tel. No. (021) 650-3075    Cell: 082 774 6039
University of Cape Town                           Fax No. (021) 650-5660
Private Bag                                       Email:   glaz@law.uct.ac.za  and glaz@iafrica.com
7701 Rondebosch                                  June 2004