# AFFIDAVIT

**I, JOHANNES DIRK KOTZE, do hereby make oath and say the following:**

1. I am a Senior Special Investigator with Persal No 0895601 employed by the Directorate of Special Operations ("DSO"), Cape Town, with telephone number (021) 4618949. I hold a National Diploma in Police Administration majoring in, Criminal Law, Law of Criminal Procedure, Evidence and Investigation of Crime. I have been in the employ of the DSO for one year. Prior to this, I was a Superintendent in the South African Police Service ("SAPS") for nineteen years, of which I spent eighteen years in an investigative capacity. I gained my investigative experience from my placement at various Criminal Investigation Departments and Specialised Units within the SAPS and this includes the investigation of serial killings, serial rapes, murders, attempted murders, armed robberies and an array of gang related offences as well as other minor offences.

## Scope of the Investigation

2. On 20 June 2001 an investigation in terms of Sect 28(1)(a) of the National Prosecuting Authority Act, No. 32 of 1998, was authorised into the following specified offences allegedly committed in respect of the harvesting and exporting of South Coast Rock lobster, West Coast Rock lobster, Hake and Patagonian Tooth Fish, by Hout Bay Fishing Industries (Pty) Ltd and/or its affiliated companies and/or its employees and/or any persons involved with the above entities or person and/or officials of the Department of Environmental Affairs and/or the Department of Customs and Excise:

   - Fraud;
   - Contravention of The Prevention of Organised Crime Act, Act 121 of 1998;
   - Contraventions of the Marine Living Resources Act, Act 18 of 1998;
   - Contraventions of the Customs and Excise Act, Act 91 of 1964;
   - Contraventions of the Corruption Act, Act 94 of 1992.

## Entities and Individuals under Investigation

3. The primary entity under investigation is Hout Bay Fishing Industries (Pty) Ltd, a company with limited liability registered and incorporated in accordance with the Companies Act of the Republic of South Africa under registration number 195800070607, carrying on business in the catching, processing and distribution of fish products both locally and abroad, with

its principal place of business at East Pier, Table Bay Harbour, Cape Town. The other companies that form part of/or affiliated to Hout Bay Fishing Industries Group are also under investigation. They are the following,

- LDG Nominees CC
- Rearn Investments (Pty) Ltd
- Aid Holdings (Pty) Ltd
- Autocrane Company (Pty) Ltd
- Sandalene Fishing (Pty) Ltd
- Homerest (Pty) Ltd
- Amandla Abasebenzi Fishing (Pty) Ltd
- Tradequick 62 (Pty) Ltd
- Fullimput 2 (Pty) Ltd

4. It has come to the fore that the following offshore companies are also affiliated to the Hout Bay Fishing Group,

- AVRIL FORTY-ONE (PTY) LTD WALVISBAY
- ICEBRAND SEAFOODS INC, 250 WEST 57TH STREET NEW YORK, USA.
- ASSOCIATED SEA FISHERIES, 250 WEST 57TH STREET NEW YORK, USA.
- BLACK EAGLE SHIPPING, 250 WEST 57TH STREET NEW YORK, USA
- FAVOURATE HOLDINGS

The companies as mentioned above and their relevant affiliation to the Hout Bay Fishing Industries (Pty) Ltd Group are the following.

- Avril Forty-one (Pty) Ltd, the relevance whereof will be set out further in this statement.
- Initially Hout Bay Fishing Industries (Pty) Ltd existed as a company standing alone and carrying on business in the catching, processing and distribution of fish products both locally and abroad. Prior to sanction laws being implemented in the USA all fishing companies in the lobster trade were compelled to sell their lobster through the South African Frozen Rock Lobster Packers Association (SAFROCK) and the lobster were then marketed in the USA by South African Rock lobster Association (SARL). After the institution of the sanction laws in the USA in 1986 this state of affairs could no longer continue and to enable the ongoing sale of rock lobster in the USA, the following measures were instituted.
- Hout Bay Fishing Industries (Pty) Ltd "sold their vessels to Black Eagle Shipping, a company registered in Panama. Information at my disposal indicates that Black Eagle Shipping is a company registered or bought by Mr Bengis to enable the registration of their fishing vessels under a Panamanian flag. This was to create the impression that although the Lobster was fished in South African waters, it was now deemed to be

Panamanian lobster because it was fished by a Panamanian flagged vessel. Information at my disposal also indicates that Mr A M Bengis also bought and/or registered a company called Favorite Holdings Inc, Panama, for the purposes as set out above.

- The Lobster could not be marketed by SARL in the USA, as SARL was linked to South Africa and thus the marketing agents previously employed by SARL started to act as independent marketing agents. Mr Arnold Bengis had a falling out with these independent marketing agents and as result of this, a company, Associated Sea Fisheries was registered in New York, USA, by Mr Bengis. Mr Jeff Noll, an accountant employed by Hout Bay Fishing Industries (Pty) Ltd at the time was then sent across to New York, USA, to run the company Associated Sea Fisheries. Associated Sea Fisheries was then used to market Hout Bay Fishing's lobster.
- The lobster was at that stage already being packed in boxes marked Icebrand. Seeing that Mr Bengis considered the American Nation to be very brand conscious, he started a second company Icebrand Seafoods Inc as a marketing strategy to further advance the brand name. Allthough Associated Sea Fisheries still existed, Icebrand Seafoods was nothing other than Associated Sea Fisheries with a new name and was used to market lobster.
- Icebrand Seafoods later entered the USA lobster trade and opened a factory in Main, USA, for the purpose.

5.  According to the Registrar of Companies, the registered Directors of Hout Bay Fishing Industries (Pty) Ltd, are;

- Mr Arnold Maurice Bengis
- Mr. Rael Kammy
- Mr Kerry Michael Spooner

6.  Mr Rael Kammy left the employ of the company in 1993 and Mr Kerry Michael Spooner in early January 2001. At present the Directors of the company are,

- Mr. Arnold Maurice Bengis
- Mr Collin Ernst Hendrik van Schalkwyk

7.  At the time of the instituting of this investigation on the 20th June 2001 the following were appointed in senior management positions at Hout Bay Fishing Industries (Pty) Ltd;

| | |
|---|---|
| - Mr. Shaun Gavin Levy | Production and Export |
| - Mr. Godfrey Lawson Howes | Financial |
| - Mr. Bernard Jacobs | Consultant in IT and Systems |
| - Mr William Syer | Maintenance |
| - Mr Robert Back | Shore Skipper |

8. Previously the following individuals were also appointed in senior positions at Hout Bay Fishing Industries (Pty) Ltd,

- Mr Grant Berman          Financial Manager
- Mr Clive Miller          Shore Skipper

9. Initially Hout Bay Fishing Industries (Pty) Ltd was a 100% subsidiary of Hout Bay Fishing Industries Holdings (Pty) Ltd with registration number 197600396107. In 1977, Hout Bay Fishing Industries Holdings (Pty) Ltd changed its name to Aid Holdings (Pty) Ltd with registration number 197600396107. The shareholders in Aid Holdings (Pty) Ltd are, Rearn Investments (Pty) Ltd with a 50,2% share and the remaining shares are divided equally, namely 16.6%, between the following trusts:

- Delta Trust       Reg. No. T1043/90 Trustee LDG Nominees CC
- Gamma Trust       Reg. No. T1044/90 Trustee LDG Nominees CC
- Lambda Trust      Reg. No. T 581/90 Trustee   LDG Nominees CC

10. LDG Nominees CC is a Close Corporation founded and owned by M Arnold Bengis to act as Trustee for the above-mentioned Trusts. LD Nominees CC appointed Mr A M Bengis as Trustee.

11. Mr. A M Bengis is the Principal Director of Aid Holdings (Pty) Ltd

12. The Director of Rearn Investments (Pty) Ltd, registration numbe 196400411807, is Mr. AM Bengis. The beneficiaries of the three above mentioned Trusts are the three children of Mr. AM Bengis, namely David Gabi and Lana. Mr. Bengis is a South African citizen, but he has also obtained American citizenship and he presently resides in the USA

13. The Management of Hout Bay Fishing Industries (Pty) Ltd registered the following companies in their structure for their respective employees. These companies are owned by Trusts and have as their respective Trustees, two Trustees nominated by Hout Bay Fishing Industries (Pty) Ltd and a nominee of the respective group of employees. This arrangement ensured that Hout Bay Fishing Industries (Pty) Ltd always had the management control over these companies.

- Amandla Abasebenzi Fishing (Pty) Ltd previously registered as Tradewith 71 owned by the Amandla Fishing Trust with beneficiaries being the Quayside and Shore-support workers. The Trustees of the trust are Grant Berman from Hout Bay Fishing Industries (Pty) Ltd and Nyamiso Nelson Qwashu representing the afore-mentioned workers.

- Fullimput 2 (Pty) Ltd owned by the Crew Trust, with the beneficiaries being the Crew and Sea-going workers. The Trustees of the trust are Grant Berman from Hout Bay Fishing Industries (Pty) Ltd and Robert James Lawrence representing the afore-mentioned workers.
- Tradequick 62 (Pty) Ltd owned by the Fish Processors Trust with the beneficiaries being the Factory workers. The Trustees of the trust are Grant Berman from Hout Bay Fishing Industries (Pty) Ltd and Julia Bertha Phillips representing the afore-mentioned workers.

14. Mr. Grant Berman, mentioned above, was previously appointed as the Financial Manager of Hout Bay Fishing Industries (Pty) Ltd. In July 1999 he left the employ of Hout Bay Fishing Industries (Pty) Ltd and accepted employment at Icebrand Sea Foods in New York, USA. It is, however, alleged that he was still in command of the financial management of the affairs of Hout Bay Fishing Industries (Pty) Ltd on a daily base.

15. On 2001/06/20, the premises of Hout Bay Fishing Industries (Pty) Ltd situated at East Pier Table Bay Harbour, Cape Town, as well as residential premises of management members, was searched in terms of search warrants lawfully obtained. During the search a large amount of evidential material was seized.

**South Coast Rock lobster:**

16. For the 1999/2000 South Coast Rock lobster Season Hout Bay Fishing Industries (Pty) Ltd applied for a quota to catch South Coast Rock lobster as well as for quota's for the above-mentioned companies.  The following rights to fish for South Coast Rock lobster were issued to Hout Bay Fishing Industries (Pty) Ltd and the above-mentioned companies:

| | |
|---|---|
| Amandla Abasebenzi Fishing (Pty) Ltd | 9000Kg |
| Fullimput 2 (Pty) Ltd | 15529Kg |
| Tradequick 62 (Pty) Ltd | 5471Kg |
| Hout Bay Fishing Industries (Pty) Ltd | 41247Kg |

17. For the 2000/2001 South Coast rock lobster Season, Hout Bay Fishing Industries (Pty) Ltd were granted a right to catch South Coast rock lobster on the applications of 1999/2000, as well as the afore-mentioned three companies. The quota amount was, however, reduced by the Department of Marine and Coastal Management as the total allowable catch (TAC) for South Coast Rock lobster was reduced. The following rights to fish for South Coast Rock lobster were issued to Hout Bay Fishing Industries (Pty) Ltd and the afore-mentioned companies:

| | |
|---|---|
| Amandla Abasebenzi Fishing (Pty) Ltd | 8829Kg |

- Fullimput 2 (Pty) Ltd                                15233Kg
- Tradequick 62 (Pty) Ltd                          5367Kg
- Hout Bay Fishing Industries (Pty) Ltd    40462Kg

18.    The Joint-Ventures with the three companies whereby it was agreed that the three companies would make their quota available to Hout Bay Fishing Industries (Pty) Ltd to catch, during the 1999/2000 was still in place and stayed the same. This allowed Hout Bay Fishing Industries (Pty) Ltd to legally catch a total of 71247 Kg of South Coast Rock lobster for the 1999/2000 seasons and 69891 Kg of South Coast Rock lobster for the 2000/2001 seasons.

### Motorized fishing vessels used in operations:

19. The fishing vessels given permits by the Department of Marine and Coastal Management to catch the total South Coast Rock lobster quota for the 1999/2000 season, were as per the respective applications, the following:

- Cape Flower          CTA 19814    Skippered by Mr. J A Gomes
- Eagle Star             CTA 19737    Skippered by Mr. H Ouwehand
- Arctic Fox             CTA 19805    Skippered by Mr. J N Tallie
- Portia 1                 CTA 19739    Skippered by Mr. J C De Gouveia
- Mare Serenitatis    CTA 19738    Skippered by Mr. J Haasnoot

20. For the 2000/2001 season, the fishing vessels given permits by the Department of Marine and Coastal Management to catch the total South Coast Rock lobster quota, were as per the respective applications, the following:

- Cape Flower          CTA 19814    Skippered by Mr. S J Burger
- Eagle Star             CTA 19737    Skippered by Mr. J Haasnoot
- Arctic Fox             CTA 19805    Skippered by Mr. J N Tallie
- Portia 1                 CTA 19739    Skippered by Mr. J C De Gouveia

21. The vessels mentioned above have the following owners:

- Cape Flower CTA 19814 owned by Homerest (Pty) Ltd with Principal Director Mr. Arnold Maurice Bengis.

- Eagle Star CTA 19737 owned by Homerest (Pty) Ltd with Principal Director Mr. Arnold Maurice Bengis.

- o Homerest (Pty) Ltd is a 100% owned subsidiary of Hout Bay Fishing Industries (Pty) Ltd. As mentioned above this company owns the vessels, Eagle Star and Cape Flower, which were used for harvesting South Coast rock lobster. This company has as its Principal Director Mr. A M Bengis and it is a dormant company. The only purpose of the company is to provide ownership for the two vessels other than Hout Bay Fishing Industries (Pty) Ltd.

- Arctic Fox CTA 19805 owned by Hout Bay Fishing Industries (Pty) Ltd with Directors Messrs Arnold Maurice Bengis and Collin van Schalkwyk.

- Portia 1 CTA 19739 owned by Aid Holdings (Pty) Ltd with Principal Director Mr. Arnold Maurice Bengis and shareholders as set out in the statement above.

- Mare Serenitatis CTA 19738 was owned during the 1999/2000 South Coast Rock lobster Season by Homerest (Pty) Ltd with Principal Director Mr. Arnold Maurice Bengis, but has since been sold to a Namibian Company, Avril Forty-one (Pty) Ltd and re-registered under the Namibian Flag. Hout Bay Fishing Industries (Pty) Ltd acted as managing agents for the Company Avril Forty-one (Pty) Ltd.

  - o Avril Forty-one (Pty) Ltd was registered by Price, Waterhouse, Coopers, Walvisbay, Namibia, as a dormant shelf company. Near the end of the year 2000, Mr. Veon van Rooyen bought Avril Forty-one (Pty) Ltd on behalf of Hout Bay Fishing Industries (Pty) Ltd. This was done because Hout Bay Fishing Industries (Pty) Ltd wanted to initiate a fishing company in Namibia and also because they wanted to register a fishing vessel in Namibia. It could only be done by a Namibian citizen, which Mr. Van Rooyen was. Mr. Veon van Rooyen was then appointed as Director of Avril Forty-one (Pty) Ltd. He initially paid R1800-00 for the company with his own money, and he was later refunded for his expenses by Hout Bay Fishing Industries (Pty) Ltd. Mr. Van Rooyen signed blank resignation forms a few days after registration of the company and he also signed a declaration of ownership to have the Mare Serenitatis registered in Namibia. On 2001/05/23 Mr. Van Rooyen signed another resignation letter and Mr. A Grane was then appointed as Director. A bank account was opened for the company at First National Bank in Walvis Bay to enable the payment of accounts, however all the funds in the account were deposited by Hout Bay Fishing Industries (Pty) Ltd.

  - o The request to have the company registered was made by Mr. Collin Ernst Hendrik van Schalkwyk of Hout Bay Fishing

Industries (Pty) Ltd to Mr. Veon van Rooyen. Thereafter he dealt with Mr. Godfrey Howes, Financial Manager of Hout Bay Fishing Industries (Pty) Ltd with regard to further requests. Mr. Van Rooyen states that he was not the owner of Avril Forty-one (Pty) Ltd and that he was not involved in any of the activities of Hout Bay Fishing Industries (Pty) Ltd or Avril Forty-one (Pty) Ltd. He only bought and registered the company at the request of Mr. Collin van Schalkwyk.

o   As mentioned, the vessel, Mare Serenitatis CTA 19738, was sold to Avril Forty-one (Pty) Ltd by Hout Bay Fishing Industries (Pty) Ltd for the amount of R95000-00, this despite the fact that the vessel is valued in excess of R16 000 000-00. No money was ever paid over to Hout Bay Fishing Industries (Pty) Ltd by Avril Forty-one (Pty) Ltd for the vessel and it can be stated that it was just a paper transaction. The vessel was then re-registered in Walvis Bay under the Namibian flag as ostensibly the property of Avril Forty-one (Pty) Ltd.   The vessel, Mare Serenitatis, after being renamed "Mare", during 2001 went to sea and it can be proved that it fished 49 tons of Patagonian Toothfish without legal permits to do so.

o   It is alleged that Hout Bay Fishing Industries (Pty) Ltd set up Avril Forty-one (Pty) Ltd as a dummy company so as to hide its involvement if the vessel was caught in the illegal fishing of Toothfish. Hout Bay Fishing Industries (Pty) Ltd is in fact still the owner of Avril Forty-one (Pty) Ltd and the Mare.

**Permit conditions:**

22. According to the permit conditions of the permits issued by the Department of Marine and Coastal Management, the vessels for which a permit has been issued could harvest South Coast rock lobster during the respective seasons for which the permit was valid. Upon returning to port, a particular vessel was required to hand in a catch return document, in writing, to the Department of Environmental Affairs, for each trip. The Permit conditions further stipulated that a vessel might not be offloaded without the presence of a Marine & Coastal Management inspector to verify the catch return and the actual amount of rock lobster caught. The *onus* is placed on the fishing company to inform the officials of the Department of Environmental Affairs that a vessel is to dock and its catch offloaded, so that the inspectors can ensure their presence during offloading and weighing. This a control measure to verify the catch return documentation handed in. This is aimed at combating over-harvesting and ensuring that companies stay within their respective legal quotas.

**Modus operandi used by Hout Bay Fishing Industries (Pty) Ltd:**

It is alleged that Hout Bay Fishing Industries (Pty) Ltd bypasses the above control mechanisms by partially offloading vessels without the presence of the designated inspectors and/or by corrupting designated inspectors whilst offloading in their presence. The evidential material available to me indicates that Hout Bay Fishing Industries (Pty) Ltd through its directors and/or managers and/or employees falsify catch return statistics documentation to reflect a lesser amount of tonnage of lobster landed. Huge amounts of lobster illegally harvested is landed and never reflected in catch return statistics. The early offloading and the corruption on the part of the Department of Environmental Affairs officials, who on the evidence verify the falsified reports helps to achieve this. Further, this creates the impression that Hout Bay Fishing Industries (Pty) Ltd complies with its legal quota.

23. On 2000/02/05 Inspector LR Uys, of Marine and Coastal Control held observation in Table Bay Harbour after receiving information that a Rock lobster Trawler, Sandalene (CTA 68 ), the property of Sandalene Fishing (Pty) Ltd, would be offloading rock lobster between 24:00 and 02:00 on 2000/02/06 illegally, at the premises of Hout Bay Fishing Industries (Pty) Ltd East Pier Table Bay Harbour Cape Town, without a Marine & Coastal Management inspector present, as stipulated in the permit conditions and in accordance with the Marine Living Resources Act, Act 18 of 1998.

   - Sandalene Fishing (Pty) Ltd, mentioned above, is a 100% subsidiary of Hout Bay Fishing Industries (Pty) Ltd. According to the registrar of Companies the Directors of Sandalene Fishing are:

      - Mr Rael Kammy
      - Mr. Kerry Spooner

   Both the above-mentioned persons have, however, left the employ of Hout Bay Fishing Industries and it is alleged that the Director of Sandalene Fishing (Pty) Ltd is Mr. A M Bengis.

24. The ship docked at 23:30 on 2000/02/05 and on 2000/02/06 at about 04:10 employees of Hout Bay Fishing Industries (Pty) Ltd started offloading the ship without a Marine & Coastal Management inspector being informed and without the inspector physically being present. As a result of this observation and the contravention of the Marine Living Resources Act, Act 18 of 1998, the officials of the Department of Environmental Affairs, assisted by members of SAPS, seized  6648 kg of rock lobster in terms of their powers according to the Act.

After investigation the Director of Public Prosecutions, Cape of Good Hope Division, instructed that a prosecution be instituted against, Houtbay Fishing Industries (Pty) Ltd as represented by Collin Ernest Hendrik van Schalkwyk, Collin Ernest Hendrik van Schalkwyk in his personal capacity, Clive Douglas Miller and Joao De Conceidao Fernandes. The case was struck off the court roll on 2001/05/24 in the Cape Town Regional Court 30 in terms of Section 342A(3) of the Criminal Procedure Act, Act 51 of 1977 - Table Bay CAS 40/02/2000 refers. This occurred as a result of allegations by the Defence Council that insufficient further particulars had been furnished to them. The Director of Public Prosecution has instructed that prosecution be reinstituted.

25. In an interview with a witness, whose identity I do not wish to disclose for reasons of protecting his safety, employed by Hout Bay Fishing Industries (Pty) Ltd for the 1999/2000 South Coast Rock lobster season on one of the vessels, it was established that the catch return documentation handed in to the Department of Marine and Coastal Management, was falsified on the instruction of Mr. Collin Ernst Hendrik van Schalkwyk. According to this witness, Mr. Collin van Schalkwyk would contact him whilst he was steaming towards his home port, Cape Town, and instruct him as to what he had to report on the catch return documents. This was at all times an under-declaration of the actual catch. As he, the witness, was paid on the actual catch and not on the reported catch, he kept his own logbook of his actual daily catch, so as to ensure that he received the correct commission. The logbook reflecting the actual catch was handed to me by the witness. The following is a spreadsheet set up by me to compare the reported catch with the catch as recorded in the logbook, with the production figures for the vessel during the 1999/2000 season as seized from Hout Bay Fishing Industries (Pty) Ltd.

| TRIP NO | DATE | REPORTED CATCH | CATCH LOGGED BY WITNESS | PRODUCTION |
|---------|------|----------------|-------------------------|------------|
| 1 | 1999/11/03 | | 4612.5 | 4698.7 |
| 2 | 1999/12/02 | 2627.5 | 3950.0 | 3972.5 |
| 2 | 1999/12/29 | 3080.0 | 5087.5 | 5084.8 |
| 3 | 2000/02/03 | 2780.5 | 7337.5 | 6855.4 |
| 4 | 2000/03/01 | 2070.5 | 4737.5 | 4585.4 |
| 5 | 2000/04/07 | 2462.0 | 7450.0 | 7082.4 |
| 6 | 2000/05/04 | 1171.5 | 3987.5 | 3972.5 |
| 7 | 2000/06/09 | 3609.0 | 4575.0 | 4471.9 |
| | | 17801.0 | 41737.5 | 40723.6 |

26. The figures reflected  above establishes a pattern of under declaration for every trip for the vessel during the 1999/2000 season. It also affords proof to the fact that the production figures and spreadsheets of the crew's

commission as seized from Hout Bay Fishing Industries (Pty) Ltd are correct and can be relied on. There is a slight difference in weight, but this can be explained as the witness did not weigh the catch on his vessel. He calculated an estimated average weight per box, as per his experience. The production sheets, however, reflect the correct weight after being weighed.

27. The alleged offences committed by the entity Hout Bay Fishing Industries (Pty) Ltd and its associates with regard to South Coast Rock lobster, were allegedly committed with the full knowledge and on instructions of the directors and management and/or employees as set out above in this statement. This allegation is founded on the following facts:

- During the search of the premises of Hout Bay Fishing Industries (Pty) Ltd on 2001/06/20 a folder was seized in the ofice of Mr. A-M Bengis. The folder contained a brown envelope with the name Mnr. C V S Wyk written on it. The envelope contains a copy of a SAPS case docket, Table Bay CAS 282/03/94. This includes copies of affidavits, correspondence and investigation diaries and it appears that the copies were made after the case had been registered but before anyone had been charged. The case pertains to the offloading of rock lobster without adhering to permit conditions, by offloading rock lobster without a Marine and Coastal Management official being present. It is alleged that the copies of the case docket had been sent to Hout Bay Fishing Industries (Pty) Ltd, so as to jeopardise the investigation into the matter.

- In 1997 a case was investigated against Hout Bay Fishing Industries (Pty) Ltd by Capt Aggenbach of the SAPS Organized Crime Unit Cape Town. Table Bay Harbour CAS 211/08/1997 refers. In his investigation Capt Aggenbach requested in writing certain information from an international based company, Interpral France, which he later received. During the search of the premises of Hout Bay Fishing Industries (Pty) Ltd on 2001/06/20 documentation was seized from the office of Mr. A M Bengis. This documentation consists of correspondence between Jack Zerbib, Interpral France, and Mr. A M Bengis. In the correspondence Mr. Bengis prescribes to Mr. Jack Zerbib of Interpral France the answer on Capt Aggenbach's request. The letter is on a Icebrand Letterhead and it is alleged that it had been signed by Mr. A M Bengis.

- The involvement of Collin Van Schalkwyk in the Avril Forty-one (Pty) Ltd set up as set out above.

- Documentation seized from the premises of Hout Bay Fishing Industries (Pty) Ltd on 2001/06/20 allegedly signed by Directors and management members of Hout Bay Fishing Industries (Pty) Ltd,

affording evidence to the alleged commission of offences.

Hout Bay Fishing Industries (Pty) Ltd over harvested on their own quota and the quotas of the companies mentioned above, which quotas were made available to them for their use. This is founded on the following set-up bearing in mind the afore-mentioned facts:

28. <u>South Coast Rock lobster 1999/2000 season:</u>

As stated above Hout Bay Fishing Industries (Pty) Ltd with the quotas made available to them by the companies as mentioned, had a quota of 71247Kg for the 1999/2000 season.

Hout Bay Fishing Industries (Pty) Ltd reported a catch return of 79001Kg of South Coast Rock lobster on documentation handed in to the Department of Marine and Coastal Management. This included an amount of 7521Kg of lobster allegedly caught on behalf of Atlantic Fishing Enterprises.

According to the production sheets of Hout Bay Fishing Industries (Pty) Ltd seized from the premises of Hout Bay Fishing Industries (Pty) Ltd on the 20th of June 2001, during a search of the premises on the grounds of a search warrant issued, the actual catch of South Coast Rock lobster for the 1999/2000 season by Hout Bay Fishing Industries (Pty) Ltd was 201239.1Kg. These figures can be broken down per vessel as follows.

- **Mare Serenitatis  Reported 17592Kg        Actual 36750.6Kg**

| VESSEL | TRIP NO | DATE | REPORTED | ACTUAL |
|---|---|---|---|---|
| Mare Serenitatis | 1 | 1999/11/03 | | 4290.3 |
| Mare Serenitatis | 2 | 1999/12/02 | 1498 | 3473.1 |
| Mare Serenitatis | 2 | 1999/12/29 | 3016.5 | 4176.8 |
| Mare Serenitatis | 3 | 2000/02/03 | 2958.5 | 6106.3 |
| Mare Serenitatis | 4 | 2000/03/10 | 5123.5 | 5221 |
| Mare Serenitatis | 5 | 2000/04/14 | 2444 | 5697 |
| Mare Serenitatis | 6 | 2000/06/0 | 2551.5 | 7786.1 |

5

| 17592 | 36750.6 |
|-------|---------|

## Portia 1 Reported 13263.5Kg    Actual     35207.7Kg

| VESSEL | TRIP NO | DATE | REPORTED | ACTUAL |
|--------|---------|------|----------|--------|
| Portia 1 | 1 | 1999/11/05 | | 3972.5 |
| Portia 1 | 2 | 1999/12/02 | 1720 | 4426.5 |
| Portia 1 | 2 | 1999/12/23 | 2369.5 | 3586.6 |
| Portia 1 | 3 | 2000/01/26 | 2050 | 4381.1 |
| Portia 1 | 4 | 2000/03/10 | 2547.5 | 6174.4 |
| Portia 1 | 5 | 2000/04/19 | 2567 | 6923.5 |
| Portia 1 | 6 | 2000/06/06 | 2009.5 | 2451.6 |
| Portia 1 | | 2000/06/13 | | 3291.5 |
| | | | 13263.5 | 35207.7 |

## Eagle Star Reported  17801Kg    Actual  40723.6Kg

| VESSEL | TRIP NO | DATE | REPORTED | ACTUAL |
|--------|---------|------|----------|--------|
| Eagle Star | 1 | 1999/11/03 | | 4698.7 |
| Eagle Star | 2 | 1999/12/02 | 2627.5 | 3972.5 |
| Eagle Star | 2 | 1999/12/29 | 3080 | 5084.8 |
| Eagle Star | 3 | 2000/02/03 | 2780.5 | 6855.4 |
| Eagle Star | 4 | 2000/03/01 | 2070.5 | 4585.4 |
| Eagle Star | 5 | 2000/04/07 | 2462 | 7082.4 |
| Eagle Star | 6 | 2000/05/04 | 1171.5 | 3972.5 |
| Eagle Star | 7 | 2000/06/09 | 3609 | 4471.9 |
| | | | 17801 | 40723.6 |

## Cape Flower Reported 17426.5Kg   Actual  47152.44Kg

| VESSEL | TRIP NO | DATE | REPORTED | ACTUAL |
|---|---|---|---|---|
| Cape Flower | 1 | 1999/11/05 | | 4471.9 |
| Cape Flower | 2 | 1999/12/02 | 1676 | 4744.3 |
| Cape Flower | 2 | 1999/12/23 | 3233.5 | 5089.3 |
| Cape Flower | 3 | 2000/01/27 | 2971 | 7105.1 |
| Cape Flower | 4 | 2000/03/03 | 2615 | 5561.5 |
| Cape Flower | 5 | 2000/04/19 | 3321 | 11440.8 |
| Cape Flower | 6 | 2000/06/08 | 3610 | 8739.5 |
| | | | 17426.5 | 47152.4 |

- **Arctic Fox Reported 12918Kg   Actual 41404.8Kg**

| VESSEL | TRIP NO | DATE | REPORTED | ACTUAL |
|---|---|---|---|---|
| Arctic Fox | 1 | 1999/11/22 | | 2065.7 |
| Arctic Fox | 2 | 1999/12/23 | 2980 | 5765.8 |
| Arctic Fox | 3 | 2000/02/17 | 3119.5 | 7127.8 |
| Arctic Fox | 4 | 2000/03/17 | 2043.5 | 6719.2 |
| Arctic Fox | 5 | 2000/04/20 | 2121 | 16230.5 |
| Arctic Fox | 6 | 2000/06/08 | 2654 | 3495.8 |
| | | | 12918 | 41404.8 |

The difference between the reported catch return statistics and the actual Lobster caught therefore amounts to 129992 Kg and it was thus ascertained that the amount of 129992Kg was over harvested for the 1999/2000 season. The estimated value of the illegally caught South Coast Rock lobster at a market related price of R300=00 per kilogram amounts to R 38 997 600=00.

The evidence  as set out above was compiled by me from the following documentation,

- o  Documentation obtained from the Department of Marine and Coastal Management reflecting Application for quotas, Letters granting quotas, Summery of successful applicants, Permits issued in respect of quotas granted and Catch return documents filed by Hout Bay Fishing Industries (Pty) Ltd

o   Documentation and computer hard drive seized from Hout Bay Fishing Industries (Pty) Ltd 0n 2001/06/20 reflecting Production sheets, Sailing dates and Spreadsheets reflecting salaries and tonnage caught.

o   An unofficial logbook of the skipper of the Eagle Star handed to me.

29. South Coast Rock lobster 2000/2001 season:

As stated above Hout Bay Fishing Industries (Pty) Ltd with the quotas made available to them by the companies as mentioned, had a quota of 69891Kg for the 2000/2001 season.

During this season the Department of Marine and Coastal Management instituted another control measure to ensure compliance to quota figures. This was a measure in the form of fishing sea days calculated on information of the average reported catch during the 1999/2000 season and the catch average in the industry for the 2000/2001 season. Hout Bay Fishing Industry (Pty) Ltd instituted court proceedings to have this control measure set aside and to gain free range during the season. They lost the application in the Cape Town High Court, but have since appealed against the decision.

Hout Bay Fishing Industries (Pty) Ltd reported a catch return of 48407.5Kg of South Coast Rock lobster on documentation handed in to the Department of Marine and Coastal Management.

According to documentation drawn from the computer hard drive of Hout Bay Fishing Industries (Pty) Ltd seized from the premises of Hout Bay Fishing Industries (Pty) Ltd on the 21st of June 2001 during a search of the premises on the grounds of a search warrant issued the actual catch of South Coast Rock lobster for the 2000/2001 season by Hout Bay Fishing Industries (Pty) Ltd was 103380Kg.  These figures can be broken down per vessel as follows.

o   **Portia 1 Reported 9694.9 Kg Actual 3080Kg**

| VESSEL | TRIP NO | DATE | REPORTED | ACTUAL |
|--------|---------|------|----------|--------|
| Portia 1 | 1 | 2001/01/08 | 1742.5 | 4930 |
| Portia 1 | 2 | 2001/02/14 | 2551 | 6430 |
| Portia 1 | 3 | 2001/03/22 | 2609 | 8010 |
| Portia 1 | 4 | 2001/04/24 | 2796 | 7730 |
| Portia 1 | 5 | 2001/05/28 | 1738.9 | 3280 |

| | |
|---|---|
| 9694.9 | 30380 |

### Eagle Star Reported 9892.52Kg        Actual 21250Kg

| VESSEL | TRIP NO | DATE | REPORTED | ACTUAL |
|---|---|---|---|---|
| Eagle Star | 1 | 2001/01/03 | 1684 | 2790 |
| Eagle Star | 2 | 2001/02/08 | 2869.5 | 4760 |
| Eagle Star | 3 | 2001/03/16 | 2534 | 3680 |
| Eagle Star | 4 | 2001/04/25 | 2870 | 6960 |
| Eagle Star | 5 | 2001/05/31 | 1619.02 | 3060 |
| | | | 9892.52 | 21250 |

### Cape Flower Reported 11031.27Kg Actual 29020Kg

| VESSEL | TRIP NO | DATE | REPORTED | ACTUAL |
|---|---|---|---|---|
| Cape Flower | 1 | 2000/12/04 | | |
| Cape Flower | 2 | 2000/12/28 | | 2130 |
| Cape Flower | 3 | 2001/02/06 | 2413.5 | 5860 |
| Cape Flower | 4 | 2001/03/13 | 1878 | 2640 |
| Cape Flower | 5 | 2001/04/24 | 2692.5 | 6210 |
| Cape Flower | 6 | 2001/05/30 | 4047.27 | 12180 |
| | | | 11031.27 | 29020 |

### Arctic Fox Reported 14362.2Kg        Actual 22730Kg

| VESSEL | TRIP NO | DATE | REPORTED | ACTUAL |
|---|---|---|---|---|
| Arctic Fox | 1 | 2001/01/05 | 2283 | 5810 |
| Arctic Fox | 2 | 2001/02/09 | 3052.5 | 5390 |
| Arctic Fox | 3 | 2001/03/16 | 2309.5 | 3260 |
| Arctic Fox | 4 | 2001/05/04 | 2119 | 5280 |
| Arctic Fox | 5 | 2001/06/08 | 4598.2 | 2990 |
| | | | 14362.2 | 22730 |

The difference between the reported catch return statistics and the actual Lobster caught therefore amounts to 54972.5Kg and it was thus ascertained that the amount of 54972.5Kg was over harvested for the 2000/2001 season. The estimated value of the illegally caught South Coast Rock lobster at a market related price of R300=00 per kilogram amounts to R 16 491 750=00

The evidence as set out above was compiled by me from the following documentation,

- Documentation obtained from the Department of Marine and Coastal Management reflecting Application for quotas, Letters granting quotas, Summery of successful applicants, Permits issued in respect of quotas granted and Catch return documents filed by Hout Bay Fishing Industries (Pty) Ltd

- Documentation and computer hard drive seized from Hout Bay Fishing Industries (Pty) Ltd 0n 2001/06/20 reflecting Production sheets, Sailing dates and Spreadsheets reflecting salaries and tonnage caught.

30. The figures of over-harvesting for the seasons 1999/2000, 2000/2001, as calculated and set out above would reflect a total of 184964.5Kg. This multiplied by a market related value of R300=00 would reflect a total of R55 489 350=00 gained from the illegally harvested Lobster.

**Hake:**

34. During the 2000 Hake season, which ranges from 2000/01/01 to 2000/12/31, Hout Bay Fishing Industries (Pty) Ltd, after application, received an allocated Hake quota of 750 000kg. Hout Bay Fishing Industries (Pty) Ltd entered into a joint venture with Life Spirit Traders (Pty) Ltd ("Life Spirit") pertaining to the harvesting of the allocated hake quota for the period 2000-04-05 to 2000-12-31.

- Life Spirit Traders (Pty) Ltd ("Life Spirit"), a company with limited liability registered and incorporated in accordance with the Companies Act of the Republic of South Africa under registration number 1998/00471/07, carrying on business in the catching and distribution of fish products both locally and abroad, also the owners of the fishing vessel, Cobelo, with its principal place of business at 22 B Pavilion Place Sea Point, Cape Town. On 1998/04/30 the company's name was changed to "Playa Cobelo Fishing (Pty) Ltd" and on 2001/06/21 to "S A Hake Fishing (Pty) Ltd"

- Life Spirit Traders (Pty) Ltd was at the time of the joint venture with Hout Bay Fishing Industries (Pty) Ltd, still the owners of the fishing vessel, Cobelo as the company had never changed the ownership registration at SAMSA when the company's name had been changed. Thus the reason for the joint venture with them and not with Playa Cobelo Fishing (Pty) Ltd.

- It is alleged that Mr. Manual Martinez-Martinez, and Mr. Victoriano Dominguez-Martin are the Directors of the company as mentioned above.

- Hout Bay Fishing Industries (Pty) Ltd bought the fishing vessel "Cobelo" from Life Spirit Traders (Pty) Ltd for the amount of R3 750 000-00 and the vessel was re-registered in their name.

According to the Memorandum of Agreement, the said two companies entered into a Joint Venture for the purpose of harvesting hake. This agreement states the following.

- Life Spirit would be responsible for the management of the "Cobelo", which includes the preparation and maintenance of the Vessel, the appointment and supervision of officers and crew for the Vessel, the provisions of fuel and bunkers, the maintenance of proper records in terms of the Maritime Shipping Act 57 of 1951 and the compliance by the officers, crew and the Vessel with all terms and conditions of the access right granted to Hout Bay and all other laws, rules and regulations pertaining or applicable to the operation of the Vessel.

- The agreement was that the Vessel would be fully insured and that the premiums and any deductions for the insurance would be the expense of the joint venture. Hout Bay Fishing Industries (Pty) Ltd will cede the policy to Life Spirit as security for the purchase price of the Vessel. That any payments of claims on this policy will be paid out to Life Spirit for as long as any amount is due by Hout Bay Fishing Industries (Pty) Ltd to Life Spirit.

- That the joint venture will pay Life spirit Traders a management fee of R32, 000.00 (thirty-two thousand rand) per month.

- Life Spirit shall undertake the packing and marketing of all fish caught by the Vessel in consultation with Hout Bay Fishing Industries (Pty) Ltd.

- Hout Bay Fishing Industries (Pty) Ltd and Life Spirit shall operate a bank account into which the proceeds of the sale of all fish caught from the Vessel, and from which all costs and expenses incurred in the management and operation of the Vessel shall be paid and that this account shall be operated by a representative of Hout Bay and Life Spirit jointly. This bank account was opened with Standard Bank Thibault Square on the 2000-02-23 with account number 070909334. This account was opened in the name of Hout Bay Fishing Industries (Pty) Ltd. The signatories to this bank account were Mr Victor Domingues, Mr Manuel Martinez and Mr Godfrey Howes.

- Hout Bay Fishing Industries (Pty) Ltd shall make available its administrative staff and facilities as well any other provisions and services as may be necessary for the operation of the Vessel, at rates that would be negotiated.

- That all profits shall accrue to Hout Bay Fishing Industries (Pty) Ltd and Life Spirit in equal shares, as well as losses shall be borne in equal shares.

- Hout Bay Fishing Industries (Pty) Ltd and Life Spirit signed this Memorandum of Agreement on the 21 February 2000.

The paper skipper for the vessel, Cobelo, for the season was Mr. Stephan Burger employed by Hout Bay Fishing Industries (Pty) Ltd.

According to the permit conditions of the permits issued by the Department of Marine and Coastal Management, the vessels for which a permit has been issued could harvest Hake during the dates specified on the respective permit. Upon returning to port, a particular vessel was required to hand in a catch return document, in the form of a trawl logbook, to the Department of Environmental Affairs, for each trip. The onus is placed on the fishing company to inform the officials of the Department of Environmental Affairs that a vessel is to dock and will be offloaded, so that the inspectors can perform an inspection if they wish to do so.

Hout Bay Fishing Industries (Pty) Ltd falsified the entries in the trawl logbook so as to reflect a lesser amount and enable them to over harvest. During the search of the premises of Hout Bay Fishing Industries (Pty) Ltd as well as the premises of Mr. Godfrey Lawson Howes on 2001/06/20, 6 trawl logbooks were seized. These logbooks reflect the actual amount of Hake caught for the period

Nine trawl logbooks were obtained from the Department of Marine and Coastal Management, reflecting the reported amount of Hake caught for the respective period.

The two sets of logbooks differ vastly and the logbooks obtained from Department of Marine and Coastal Management, reflecting the reported amount of Hake caught reflect a much lesser amount of Hake caught than the logbooks seized from the premises of Hout Bay Fishing Industries (Pty) Ltd as well as the premises of Mr. Godfrey Lawson Howes on 2001/06/20.

The amount of Hake caught as reflected in the trawl logbooks seized is verified by export and local sales and thus it can be accepted that it reflects the actual amount of Hake landed.

As mentioned the allocated quota for Hout Bay Fishing Industries (Pty) Ltd for the period 2000/01/01 to 2000/12/31 was 750 000kg. According to the trawl logbooks seized and the documentation for export and local sales the actual catch for the same period was reflected as being 1 662 818,78kg. Thus reflecting that Hout Bay Fishing Industries and Life Spirit had over harvested their quota with 912 818,78kg.

Documentation seized on 2001/06/20 indicating the profits and losses of this joint venture indicates that a profit of R12 805 568=00 was made on the Hake over harvested.

**Corruption:**

35. Interviews with various role-players in the industry, including officials from the Department of Marine and Coastal Management and ex-employees of Hout Bay Fishing Industries (Pty) Ltd indicated that Inspectors from the Department of Marine and Coastal Management were fully aware of the over harvesting by Hout Bay Fishing Industries (Pty) Ltd. They were facilitating this and they were paid for their participation.

36. During the search of Hout Bay Fishing Industries (Pty) Ltd on 2001/06/28 documentation was seized that related to the petty cash register of Hout Bay Fishing Industries (Pty) Ltd for the period 1997/10/30 to 2000/12/13. The document was handwritten and reflected payments to inspectors from the Department of Marine and Coastal Management with regard to names, dates and reason for payment. The document reflected that payment was made to two inspectors at a time with the acceptance of a few incidents where up to ten inspectors were paid (investigation revealed that these incidents usually took place on Fridays). The amount reflected as payment differs between R1000 and R1500 with the acceptance of one Inspector whom regularly received R10 000.

37. The following inspectors are implicated according the "pay list" for the period 1997/10/30 until 2000/12/13.

| Inspectors: | Counts: | Amounts: |
| --- | --- | --- |
| Basson C | 46 | R 50,297.00 |
| Carstens S | 13 | R 17,500.00 |
| De Lange H | 30 | R 35,500.00 |
| De Waal H | 20 | R 27,000.00 |
| Gahl W | 35 | R 35,300.00 |
| Geldenhuys D | 8 | R 10,000.00 |
| Grundeling R | 8 | R 7,000.00 |
| Hollings M | 18 | R 23,500.00 |
| Johnson E | 6 | R 8,500.00 |
| Myburg J | 18 | R 23,500.00 |
| Peceur R | 15 | R 16,000.00 |
| Roux M | 34 | R 39,100.00 |
| Truter R | 28 | R 33,600.00 |
| Uys P | 18 | R 38,750.00 |
| 14 Inspectors | 297 | R 365,547.00 |

**Summary:**

38. At this stage it can be stated on the evidential material available to me, that Hout Bay Fishing Industries (Pty) Ltd as represented by its Directors and/or the directors and management members, as mentioned above, in their personal capacities and/or the persons specified above, who acted as *sociis criminis*, committed and/or conspired to commit the offences [multiple counts] of Fraud and/or Forgery and Uttering and/or Contraventions of Section 58(1)(a) read with section 13 of the Marine Living Resources Act, Act 18 of 1998 and/or Contraventions of Section 1 (1)(a)(i) and/or (ii) of the Corruption Act, Act 94 of 1992 over the period 1 November 1999 to 1 June 2001.

39. Investigations are still in progress with regard to the alleged commission of other offences

**Corroborative evidence:**

40. The facts as set out above are derived from knowledge obtained by myself during the course of the investigation and they are confirmed by information on oath.

41. I hereby  respectfully submit that reasonable grounds exist to arrest the persons mentioned in annexure A as well as to search the premises mentioned in annexure B, to search for the items mentioned in annexure C.

DATED AT CAPE TOWN ON THIS 6TH DAY OF DECEMBER 2001-12-05

I know and understand the contents of this statement.
I have no objection to taking the prescribed oath.
I consider the prescribed oath to be binding on my conscience.

**J D KOTZE**
**SENIOR SPECIAL INVESTIGATOR**

I certify that the above statement was taken by me and that the deponent acknowledged that he knows and understands the contents thereof. The statement was sworn to and the deponent's signature placed thereon in my presence at Cape Town on the 6th December 2001 at ...............

**COMMISSIONER OF OATHS**
**[EX OFFICIO]**

FULL NAMES          :

DESIGNATION         :    POLICE OFFICER