UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                          :

                       Plaintiff,              :

                                                 :              03 Cr. 308 (LAK) (AJP)

                -against-                :

ARNOLD MAURICE BENGIS, JEFFREY       :       **REPORT AND RECOMMENDATION**
NOLL & DAVID BENGIS,

                                    :

                    Defendants.              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Lewis A. Kaplan, United States District Judge:**

           Presently before the Court is the Government's motion for restitution under the

Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A.  (Dkt. No. 194: Notice of

Motion; Dkt. No. 196: Gov't Br.)  The background facts are set forth in the prior decisions in this

case, familiarity with which is assumed.  See United States v. Bengis, 03 Cr. 0308, 2006 WL

3735654 (S.D.N.Y. Dec. 19, 2006) (Peck, M.J.), report & rec. adopted, 2007 WL 241370 (S.D.N.Y.

Jan. 29, 2007) (Kaplan, D.J.); United States v. Bengis, 03 Cr. 0308, 2007 WL 1450381 (S.D.N.Y.

May 17, 2007) (Peck, M.J.), report & rec. adopted, 2007 WL 2669315 (S.D.N.Y. Sept. 12, 2007)

(Kaplan, D.J.), rev'd, United States v. Bengis, 631 F.3d 33 (2d Cir. 2011).

           For the reasons set forth below, the Court should order defendants Arnold Bengis,

Jeffrey Noll and David Bengis, jointly and severally, to pay restitution in the amount of $54,883,550

to South Africa.

## PROCEDURAL BACKGROUND

On January 29, 2007, Judge Kaplan adopted this Court's Report and Recommendation declining to order restitution pursuant to the MVRA against defendants Arnold Bengis, Jeffrey Noll and David Bengis.  See United States v. Bengis, 03 Cr. 0308, 2007 WL 241370 (S.D.N.Y. Jan. 29, 2007) (Kaplan, D.J.), adopting 2006 WL 3735654 (S.D.N.Y. Dec. 19, 2006) (Peck, M.J.).  The Government then requested that the Court order defendants to pay restitution under the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663.  (See Ex. 9:[1] Gov't VWPA Br.)  On May 17, 2007, this Court declined to order restitution under the VWPA.  See United States v. Bengis, 03 Cr. 0308, 2007 WL 1450381 (S.D.N.Y. May 17, 2007) (Peck, M.J.).  On September 12, 2007, Judge Kaplan adopted the Report and Recommendation and further held that "the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section would outweigh the need to provide restitution to the Republic of South Africa even if the Republic were a permissible beneficiary of restitution on the facts of this case."  United States v. Bengis, 03 Cr. 0308, 2007 WL 2669315 at *1-2 (S.D.N.Y. Sept. 12, 2007) (Kaplan, M.J.).

On January 4, 2011, the Second Circuit reversed and remanded.  United States v. Bengis, 631 F.3d 33 (2d Cir. 2011).  Specifically, the Second Circuit held that "South Africa has a property right in illegally harvested rock lobsters. . . . Under South African Law . . . the South African government is authorized to seize illegally harvested lobsters, sell them, and retain the proceeds."  Id. at 39 (citation omitted).  The Second Circuit further found that "the defendants' criminal conduct 'directly harmed' the South African government, which in turn makes South Africa

---

[1]     References to Exhibits 1-12 are the exhibits to the affidavit of AUSA Daniel Levy, Dkt. No. 195, and references to Exhibits 13-17 are the exhibits to the Government's Reply Brief, Dkt. No. 201.

eligible for restitution" and "the MVRA governs the restitution award at issue here." Id. at 41. The

Second Circuit concluded:

> We further conclude that the facts on the record do not support the district court's finding that the complexity of fashioning an award of restitution would further complicate and prolong the sentence so that the burden on the sentencing process outweighs any need to provide restitution to which South Africa is entitled. Given our analysis of the nature of South Africa's property interest and our review of the record, OLRAC Method II seems to us a sufficient loss calculation methodology under the circumstances presented by this case. This method most directly traces the nature of the loss inflicted on South Africa because, had the poaching been detected, South Africa would have been entitled to seize the illegally harvested lobsters at that time and sell them at market price for its own benefit. Restitution would thus be calculated by multiplying the number of poached lobsters by the corresponding market price (based on the prevailing market rates at the time the lobsters were poached). Every overharvested lobster that South Africa did not seize and sell represents a loss that has not been recovered.
>
> We note, furthermore, that there is no problem in imposing both a restitution award and a forfeiture award in this case.  We leave to the district court's determination in the first instance all relevant issues relating to the amount of restitution, whether any off-set should apply, and if so, whether there should be one based on the forfeiture. We note in passing, however, that to the extent that a restitution award for South Africa that is derived from the market value of the illegally harvested lobsters might be duplicative of the sums that defendants have already forfeited to the United States, the government may exercise its discretion to transfer the forfeited funds to South Africa, in order to reduce the restitution award by the amount defendants have already forfeited.  We express no view as to how such issues should be resolved.

Id. at 41 (citations omitted, emphasis added).  The Supreme Court denied certiorari on May 23,

2011.  Bengis v. United States, 131 S. Ct. 2911 (2011).

Presently before the Court is the Government's motion for restitution under the

MVRA using ORLAC Method II.  (Dkt. No. 194: Notice of Motion; Dkt. No. 196: Gov't Br.; Dkt.

No. 201: Gov't Reply Br.)

## ANALYSIS

## RESTITUTION PURSUANT TO THE MVRA

### A.    Legal Standard[2]

"In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court . . . ."  18 U.S.C. § 3664(f)(1)(A).[3] Restitution is only concerned with the victim's actual loss because "the purpose of restitution is essentially compensatory."  United States v. Boccagna, 450 F.3d 107, 115, 119 (2d Cir. 2006).[4] "The Government bears the burden of proving a victim's actual loss by a preponderance of the evidence."  United States v. Zangari, 677 F.3d at 92; see, e.g., 18 U.S.C. § 3664(e) ("Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence."); United States v. Niebuhr, 456 F. App'x 36, 38 (2d Cir. 2012).  "The district court need not establish the loss with precision but rather 'need only make a reasonable estimate of the

---

[2]    "The court may refer any issue arising in connection with a proposed order of restitution to a magistrate judge . . . for proposed findings of fact and recommendations as to disposition, subject to a de novo determination of the issue by the court."  18 U.S.C. § 3664(d)(6).

[3]    Accord, e.g., United States v. Zangari, 677 F.3d 86, 91 (2d Cir. 2012); United States v. Qurashi, 634 F.3d 699, 703 (2d Cir. 2011).

[4]    See, e.g., United States v. Zangari, 677 F.3d at 91 ("Because 'the purpose of restitution is essentially compensatory,' and because the MVRA itself limits restitution to 'the full amount of each victim's loss,' a restitution order must be tied to the victim's actual, provable, loss." (citations omitted)); United States v. Gonzalez, 647 F.3d 41, 65 (2d Cir. 2011) ("The purpose of restitution is to compensate victims for their losses."); United States v. Qurashi, 634 F.3d at 703 ("'[T]he purpose of restitution is essentially compensatory . . . .'  The 'primary and overarching' goal of the MVRA is 'to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being.'" (citation omitted)).

loss, given the available information.'"  United States v. Carboni, 204 F.3d 39, 46 (2d Cir. 2000).[5]

"A district court may make a reasonable estimate 'by extrapolating the average amount of loss from

known data and applying that average to transactions where the exact amount of loss is unknown.'"

United States v. Uddin, 551 F.3d at 180.[6]

## B.   Application

### 1.   Preponderance Of The Evidence Is The Appropriate Burden Of Proof

Defendants assert that the "onus of proof is on the Government to prove their claim

Beyond a Reasonable Doubt as required in criminal case such as this, or by the Preponderance of

Evidence at a minimum." (Dkt. No. 200: Defs. Opp. Br. at 6.)  Relying on United States v. Booker,

543 U.S. 220, 125 S. Ct. 738 (2005), defendants argue that the "'maximum sentence a Judge may

impose is a sentence based upon the facts admitted by the defendant,'" and that this applies to

restitution.  (Defs. Opp. Br. at 11.)  Defendants' arguments are contrary to Second Circuit authority.

"The Government bears the burden of proving a victim's actual loss by a

preponderance of the evidence."  United States v. Zangari, 677 F.3d 86, 92 (2d Cir. 2012) (emphasis

added); see 18 U.S.C. § 3664(e).  "[T]here is no constitutional requirement that the facts needed for

the district court's fashioning of a restitution order be found by a jury or found beyond a reasonable

doubt."  United States v. Reifler, 446 F.3d 65, 116 (2d Cir. 2006).  "[J]udicial factfinding relevant

---

[5]   Accord, e.g., United States v. Melhado, Flynn & Assocs., Inc., 455 F. App'x 81, 83 (2d Cir. 2012); United States v. Uddin, 551 F.3d 176, 180 (2d Cir.), cert. denied, 129 S. Ct. 2886 (2009).

[6]   See also, e.g., United States v. Treacy, 639 F.3d 32, 48 (2d Cir. 2011) ("A court is permitted to use general points of reference as a starting point for calculating the losses or gains from fraudulent transactions and may make reasonable extrapolations from the evidence established by a preponderance of the evidence at the sentencing proceeding."); United States v. Hatfield, 795 F. Supp. 2d 219, 222 (E.D.N.Y. 2011) (same).

to an MVRA restitution order does not implicate Sixth Amendment rights."  United States v. Boccagna, 450 F.3d 107, 108-09 (2d Cir. 2006).  "[T]he imposition of restitution orders based on the district judges' findings by a preponderance of the evidence d[o] not constitute error under Apprendi, Blakely, and Booker."  United States v. Reifler, 446 F.3d at 114, 118 ("[T]he Booker-Blakely principle that jury findings, or admissions by the defendant, establish the 'maximum' authorized punishment has no application to MVRA orders of restitution."); see, e.g., United States v. Lauersen, 287 F. App'x 115, 116 (2d Cir.) ("We have determined previously that Booker identifies 'no constitutional requirement that the facts needed for [a] district court's fashioning of a restitution order be found by a jury or found beyond a reasonable doubt.'"), cert. denied, 555 U.S. 997, 129 S. Ct. 516 (2008); United States v. Hicks, 282 F. App'x 45, 47 (2d Cir. 2008); United States v. Dupes, 513 F.3d 338, 345-46 (2d Cir.) ("We have already held in United States v. Reifler that 'there is no constitutional requirement that the facts needed for the district court's fashioning of a restitution order be found by a jury beyond a reasonable doubt.' . . .  As no intervening Supreme Court decision has called our decision in Reifler into doubt, we are without authority to overrule it." (citations omitted)), cert. denied, 552 U.S. 1272, 128 S. Ct. 1686 (2008).

Accordingly, the Government need only establish restitution by a preponderance of the evidence, not beyond a reasonable doubt, and is not limited to the facts admitted by defendants' guilty plea allocutions.

2. **OLRAC Method II Is A Reasonable Loss Calculation**

The total loss to South Africa under the Ocean and Land Resource Assessment Consultants ("OLRAC") Method II is $61,932,630.  (Ex. 2: Gov't 12/22/04 Restitution Br. at 19-20 & n.6;  Ex. 2-A: OLRAC Report; Ex. 2-B: OLRAC Calculations; Dkt. No. 196: Gov't Br. at 4, 6 n.2.)  "OLRAC Method II focused on the market value of the overharvested fish and was calculated

by multiplying the quantity of overharvested fish [for each year] by the prevailing market price."

United States v. Bengis, 631 F.3d 33, 37 (2d Cir. 2011); accord, id. at 41.  The OLRAC Method II

calculations were based on:

> (1) admissions by a company controlled by Arnold Bengis; (2) detailed information provided to the Government by the defendants' co-conspirators who had direct, first-hand knowledge of the defendants' scheme to overharvest West Coast rock lobster, including the fact that all of the illegally harvested West Coast rock lobster was imported into the United States; and (3) hard data relating to the defendants' fishing of South Coast rock lobster.

(Gov't Br. at 7, citation omitted.)  The "OLRAC Report employed decidedly conservative over-

harvesting numbers based on, among other things, information provided by co-conspirators who had

direct, first-hand knowledge of the defendants' overharvesting.  Information from co-conspirators

was provided principally via a declaration of a Special Agent of the National Oceanic and

Atmospheric Administration [("NOAA")] . . . ."  (Gov't Br. at 4-5; see Ex. 2: Gov't 12/22/04

Restitution Br. at 2-3, 7-10, 11-15; Ex. 2-C: Ray Aff. ¶¶ 3-5.)

   Defendants seek "to discredit the Olrac Report in its entirety, and offer the Court an

alternative and just method on which to base the calculation of Restitution."  (Dkt. No. 200: Defs.

Opp. Br. at 1-2.)  Defendants assert that the Government must prove "the amount of lobster caught

in excess of the fishing quotas in South Africa from 1987 to 2001" and further prove "that these

lobsters were shipped to the United States, and not to other traditional markets such as Japan, Hong

Kong and Europe."  (Defs. Opp. Br. at 6; see Dkt. No. 205: Defs. Surreply Br. at 1, 4-5.)

   With respect to the quantity of overharvested rock lobster, defendants state that

"[a]part from the facts agreed upon in the plea agreements . . . there is no documentary proof of any

quantities of lobster caught in excess of quotas beyond the 1999/2001-time period."  (Defs. Opp. Br.

at 6; see Defs. Surreply Br. at 10.)  Defendants attempt to discredit NOAA Special Agent Ray, as

well as the co-conspirators, but they fail to make any availing arguments or to supply evidence of factual disputes.  (Defs. Opp. Br. at 2, 7-8; Defs. Surreply Br. at 4-8; <u>see also</u> Dkt. No. 201: Gov't Reply Br. at 9-14; Ex. 15: Ray Curriculum Vitae.)  As stated above, the "district court need not establish the loss with precision but rather 'need only make a reasonable estimate of the loss, given the available information.'"  (<u>See</u> cases cited on pages 4-5 above.)  Moreover, a "district court may make a reasonable estimate 'by extrapolating the average amount of loss from known data and applying that average to transactions where the exact amount of loss is unknown.'"  (<u>See</u> cases cited on page 5 above.)

OLRAC calculated the quantity of overharvested rock lobster by using the known data from 1999-2001 and extrapolating this data to ascertain the overharvested quantity from 1987-2000.  (<u>See</u> Ex. 2-A: OLRAC Report at 30-31; Ex. 2-B: OLRAC Calculations; Ex. 16: S. Afr. Plea Agmt. Exs. A & B; Defs. Opp. Br. Ex. A: S. Afr. Plea Agmt. at 9-11; Gov't Reply Br. at 16-17.)  While defendants assert that the OLRAC quantity is not reliable (<u>see</u> Defs. Opp. Br. at 2, 10-11), they fail to provide their own calculation of the quantity of overharvested rock lobster (<u>see</u> Ex. 2: Gov't 12/22/04 Restitution Br. at 17-18).  Defendants also fail to mention that they deliberately destroyed evidence during the course of the investigation, destroying records that could have been used to better determine the number of overharvested rock lobster.  (<u>See</u> Ex. 1-J: Sentencing Tr. at 46; Ex. 13: Indictment ¶¶ 14(i-ii), 31(l, n); Gov't Reply Br. at 18.)

Defendants also argue that the Government cannot prove that all of the overharvested rock lobster was shipped to the United States, as opposed to other markets.  (Defs. Opp. Br. at 6-7, 8-11; Defs. Surreply Br. at 4-5.)  This argument is misplaced.  "'Congress broadened the scope of restitution from losses attributable solely to the offense of conviction to all losses caused in the course of a defendant's criminal conduct, <u>whether the defendant is convicted of each of those</u>

9

offenses or not.'"  United States v. Boyd, 222 F.3d 47, 50 (2d Cir. 2000).[7]  Courts have the

"authority to order a participant in a conspiracy to pay restitution even on uncharged or acquitted

counts."  United States v. Boyd, 222 F.3d at 51.[8]  "Neither Boyd nor any other case, however, holds

that a defendant can be required to pay restitution for losses caused by acquitted or uncharged

conduct that extends beyond the 'scheme, conspiracy, or pattern of criminal activity' included 'as an

element' of the offense of conviction."  United States v. Lisa, 152 F. App'x at 87 (citing 18 U.S.C.

§ 3663A(a)(2)).

       Each defendant pleaded guilty to a conspiracy to violate the Lacey Act, and

defendants Arnold Bengis and Jeffrey Noll also pleaded guilty to violations of the Lacey Act.  (See

Ex. 1-D: A. Bengis Plea Agmt. Ltr. at 1; Ex. 1-E: Noll Plea Agmt. Ltr. at 1; Ex. 1-F: D. Bengis Plea

Agmt. Ltr. at 1.)  During the plea hearings, AUSA Marcus Asner stated the elements of the crimes

that defendants were pleading to:

> [W]ith respect to Count One, which charges conspiracy to violate the Lac[e]y Act
> and smuggling, there are essentially three elements. The government would have to
> prove beyond a reasonable doubt . . . that:
>
>     Two or more persons entered into an agreement to accomplish the illegal
> objectives;
>
>     Second, that the defendant knowingly and willingly became a member of the
> conspiracy, and;
>
>     Third, that any one of the co-conspirators committed at least one overt act in
> furtherance of the conspiracy during the life of the conspiracy.

---

[7]    Accord, e.g., United States v. Lisa, 152 F. App'x 85, 87 (2d Cir. 2005); Lee v. United States, 05 Civ. 5844, 2007 WL 1987868 at *6 (S.D.N.Y. July 9, 2007); United States v. Dupre, 04 Cr. 0267, 2007 WL 1589451 at *5 (S.D.N.Y. June 4, 2007), aff'd, 296 F. App'x 113 (2d Cir. 2008), cert. denied, 129 S. Ct. 2158 (2009).

[8]    Accord, e.g., United States v. Zangari, 677 F.3d 86, 96 (2d Cir. 2012); United States v. Lisa, 152 F. App'x at 87; United States v. Popovic, 8 F. App'x 22, 26 (2d Cir. 2001).

. . . .

> To be found guilty under the Lac[e]y Act the government would have to prove beyond a reasonable doubt three elements:
>
> That the fish at issue was taken, possessed, transported or sold in violation of any law or regulation of any state or in violation of any foreign law and here the foreign law is the law of the republic of South Africa;
>
> Second, that the defendant knowingly imported, transported, sold, received or acquired the fish; and,
>
> Third, that the defendant knew that the fish was taken, possessed, transported or sold in violation of any underlying law, treaty or regulation.

(Ex. 1-G: A. Bengis Plea Tr. at 12-13; accord, Ex. 1-H: Noll Plea Tr. at 11-12; Ex. 1-I: D. Bengis Plea Tr. at 14-15.)

The Indictment clearly stated that defendants engaged in a conspiracy that involved the illegal harvesting of rock lobster in South Africa's territorial waters. (See Ex. 13: Indictment ¶¶ 13, 27(a), 31(a).) Defendants pleaded guilty to a conspiracy to violate the Lacey Act, which involved the overharvesting of rock lobster in violation of the laws of South Africa. (Ex. 1-G: A. Bengis Plea Tr. at 5-6, 14; Ex. 1-H: Noll Plea Tr. at 4, 13; Ex. 1-I: D. Bengis Plea Tr. at 5, 12-14.) The Government need not prove that all of the overharvested rock lobster was shipped to the United States because overharvesting South African rock lobster was part of the conspiracy. See, e.g., United States v. Zangari, 677 F.3d at 96-97 (Defendant "could have been held liable, jointly and severally, for all the losses suffered by the victims during the course of the conspiracy, not merely those directly tied to his actions."); United States v. Kanan, 387 F. App'x 120, 122-23 (2d Cir.) (affirming restitution to the states of New York and Massachusetts where defendant pled guilty to a scheme of bank fraud but did not plead guilty to state tax fraud), cert. denied, 131 S. Ct. 354 (2010); United States v. Dhafir, 342 F. App'x 702, 706 (2d Cir. 2009) (affirming restitution in favor

of Medicaid where it was "a victim of the same criminal scheme and course of conduct that

constituted the offense" against Medicare ), <u>cert. denied</u>, 130 S. Ct. 3399 (2010); <u>United States</u> v.

<u>Geiger</u>, 245 F. App'x 86, 87 (2d Cir. 2007) (affirming restitution where the "undisputed facts in their

plea agreements and in the Presentence Reports . . . satisfactorily establish a single conspiracy to

defraud customers, in which these defendants were full participants").

Moreover, the Second Circuit already rejected defendants' argument:

[T]he defendants contend that . . . [South Africa] is not a victim of the conspiracy because the conspiracy to which the defendants pleaded guilty did not involve the illegal harvesting of the lobsters, only their importation to the United States with the knowledge that the lobsters had been obtained in violation of South African law.  We are not persuaded.  The defendants need not have personally harvested the lobsters in order to have deprived the South African government of its property right in the lobsters.  <u>By smuggling the lobsters out of South Africa knowing that they had been harvested unlawfully, defendants deprived the South African government of its right to seize and sell the poached lobsters</u>.  The defendants' conduct facilitated the illegal harvesting of the lobsters by providing access to the United States market and enabled the poaching to go undetected by the South African government by, for example, off-loading the overharvested lobster at night, under-reporting catch amounts to South African authorities, bribing officials, and submitting false export documents.  In doing so, the defendants' criminal conduct 'directly harmed' the South African government, which in turn makes South Africa eligible for restitution under the VWPA and MVRA.

<u>United States</u> v. <u>Bengis</u>, 631 F.3d at 40-41 (emphasis added).

Defendants assert that because "it is impossible to determine the amount of over

caught lobster imported by [defendants' company] 'Icebrand' into the United States," the Court

should determine restitution based on the South African and United States plea agreements,

concluding that the "loss amount in the US Plea Agreement of $7.4 mil is probably the most logical

under the circumstances."  (Defs. Opp. Br. at 11-12, emphasis omitted; <u>see also</u> Defs. Surreply Br.

at 10.)  While defendants have had numerous opportunities to propose an alternative to OLRAC's

measure of loss, including when defendants had counsel (<u>see</u> Ex. 2: Gov't 12/22/04 Restitution Br.

at 17-18; Ex. 3: 1/13/05 Conf. Tr. at 7-10; Ex. 9: Gov't VWPA Br. at 20), defendants made a

strategic decision to attempt to undermine the Government's calculations and to forego submitting

their own loss calculation.  Merely asserting that the forfeiture amount in the plea agreements is "the

most logical" (see page 11 above) because it is the only figure that is "agreed by all parties" (Defs.

Opp. Br. at 11) is unavailing.

      Moreover, the Second Circuit substantially approved the use of OLRAC Method II:

"Given our analysis of the nature of South Africa's property interest and our review of the record,

OLRAC Method II seems to us a sufficient loss calculation methodology under the circumstances

presented by this case."  United States v. Bengis, 631 F.3d at 41; see also page 3 above.  The

OLRAC Method II restitution calculation is a reasonable extrapolation based on known data.

      Accordingly, the Court should utilize OLRAC Method II and find that South Africa

suffered a loss of $61,932,630.

### 3.    Restitution Should Be Offset By The Amount Paid To South Africa

      The Government seeks restitution in the amount of $54,883,550, which represents

the total loss to South Africa of $61,932,630 less $7,049,080 to account for the amount defendants

previously paid to South Africa.[9/]  (Ex. 2: Gov't 12/22/04 Restitution Br. at 19-20 & n.6; Gov't Br.

at 1, 6 n.2, 8; Gov't Reply Br. at 1.)  Defendants assert that the Court should reduce the restitution

---

[9/]    Hout Bay, a company controlled by Arnold Bengis, previously paid fines totaling 40 million
Rand to South Africa.  (Ex. 2: Gov't 12/22/04 Restitution Br. at 19; Dkt. No. 200: Defs. Opp.
Br. at 4.)  In its December 22, 2004 brief, the "Government submit[ted] that the Court should
use the [then] present exchange rate which . . . is significantly more advantageous to the
defendants."  (Ex. 2: Gov't 12/22/04 Restitution Br. at 19 n.6.)  The Government continues
to use this conversion in its present motion papers.  (See Dkt. No. 196: Gov't Br. at 6 n.2, 8;
Dkt. No. 201: Gov't Reply Br. at 1.)  Defendants have not proposed a different conversion
rate.

amount by the 40 million Rand already forfeited to South Africa and $7.4 million forfeited to the United States.  (Defs. Opp. Br. at 12.)

The Government agrees to offset the restitution by $7,049,080 to account for the amount previously paid to South Africa, but asserts that the restitution amount should not be offset by the $7.4 million forfeited to the United States.  (See Gov't Br. at 8-9 & n.3.)  The Government maintains that "[r]estoration is a matter of the application of internal agency policy . . . [that] typically follows the entry of a restitution order."  (Gov't Br. at 9.)[10/]  The Second Circuit substantially agreed, stating:

> We note, furthermore, that there is no problem in imposing both a restitution award and a forfeiture award in this case.  We leave to the district court's determination in the first instance all relevant issues relating to the amount of restitution, whether any off-set should apply, and if so, whether there should be one based on the forfeiture.  We note in passing, however, that to the extent that a restitution award for South Africa that is derived from the market value of the illegally harvested lobsters might be duplicative of the sums that defendants have already forfeited to the United States, the government may exercise its discretion to transfer the forfeited funds to South Africa, in order to reduce the restitution award by the amount defendants have already forfeited.  We express no view as to how such issues should be resolved.

United States v. Bengis, 631 F.3d 33, 41 (2d Cir.) (citations omitted, emphasis added), cert. denied, 131 S. Ct. 2911 (2011).  Moreover, defendants' plea agreements stated:  "It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture."  (Ex. 1-D: A. Bengis Plea Agmt. Ltr. at 2; accord, Ex. 1-E: Noll Plea Agmt. Ltr. at 2; Ex. 1-F: D. Bengis Plea Agmt. Ltr. at 2.)

---

[10/]   The Government added that "[s]hould funds forfeited to the United States be restored to South Africa then, of course, the defendants will be credited with these amounts and the outstanding restitution amount will be reduced by the amount of the restoration."  (Gov't Br. at 9.)

Accordingly, the Court should only reduce the restitution award by $7,049,080 to account for the amount previously paid to South Africa, thus resulting in a restitution order of $54,883,550.

**4.      Defendants Remaining Arguments Are Unavailing**

The Court briefly addresses defendants' additional arguments, all of which are unavailing.

Relying on United States v. Akande, 200 F.3d 136, 137 (3d Cir. 1999), defendants argue that "'in the absence of a specific agreement to the contrary, an order of Restitution in a criminal case may not include losses caused by conduct that falls outside the temporal limits established by a guilty plea.'"  (Dkt. No. 200: Defs. Opp. Br. at 11.)  United States v. Akande is inapposite because it concerned restitution for losses caused by conduct that occurred before the offense established by the indictment and plea.  United States v. Akande, 200 F.3d at 143 ("The government framed the Information to charge conduct that began on December 31, 1997 . . . . Because [the November 1997] events were not mentioned in the Information or during the plea colloquy, they may not be considered after the fact to be part of the defendant's offense of conviction.").

The Government here seeks restitution for overharvesting rock lobster from 1987 to 2001, the same time period set forth in the indictment and plea agreements (i.e., "Count One charges the defendant with participating in a conspiracy from in or about 1987 through in or about August 1, 2001 . . . ."), and discussed during the plea hearings (i.e., "Count One, this charges you with participating in a conspiracy from in or about 1987 to in or about August 1st, 2001 . . . ."). (See Ex. 1-D: A. Bengis Plea Agmt. Ltr. at 1; Ex. 1-E: Noll Plea Agmt. Ltr. at 1;  Ex. 1-F: D. Bengis Plea

Agmt. Ltr. at 1; Ex. 1-G: A. Bengis Plea Tr. at 4; Ex. 1-H: Noll Plea Tr. at 3-4; Ex. 1-I: D. Bengis Plea Tr. at 4-5.)

The only differing time period arose during each defendant's allocution. (See Ex. 1-G: A. Bengis Plea Tr. at 14; Ex. 1-H: Noll Plea Tr. at 13; Ex. 1-I: D. Bengis Plea Tr. at 13-14.) The imposition of restitution, however, does not violate the Sixth Amendment if proved by a preponderance of the evidence even where the time period of the conspiracy was not admitted by the defendant during the plea allocution. See, e.g., United States v. Dupes, 513 F.3d 338, 345 (2d Cir.) (rejecting defendant's argument "that the Sixth Amendment, as interpreted in the line of cases from Apprendi through Booker, requires that the amount of loss serving as the basis of a restitution order be . . . admitted by the defendant"), cert. denied, 552 U.S. 1272, 128 S. Ct. 1686 (2008); Dulal-Whiteway v. U.S. Dep't of Homeland Sec., 501 F.3d 116, 130 (2d Cir. 2007) (Sotomayor, C.J.) ("The restitution set by a judge is based on a loss amount established by a preponderance of the evidence and need not be tied to the facts admitted by a defendant's plea."), abrogated on other grounds by Nijhawan v. Holder, 557 U.S. 29, 129 S. Ct. 2294 (2009); United States v. Rovetto, 179 F. App'x 70, 72 (2d Cir. 2006) ("We reject also [defendant]'s contention that the imposition of restitution pursuant to the [MVRA] violates his rights under the Sixth Amendment." (citation omitted)); United States v. Reifler, 446 F.3d 65, 120 (2d Cir. 2006) ("We thus reject the contentions of [defendants] that the orders requiring them to make restitution for loss amounts not admitted in their plea allocutions violated their rights under the Sixth Amendment as enunciated in Booker.").

Defendants also assert that "the principal of 'Natural Justice' should be considered" and that due to the delay in determining restitution, "'due process of law' [has] been abused." (Defs. Opp. Br. at 4-5.) Defendants state that they "are now almost 3000 days after sentencing . . . and have still not been able to get on with our lives with this dark cloud overhanging us." (Defs. Opp.

Br. at 5-6.)  "While the MVRA provides that 'the court shall set a date for the final determination

of the victim's losses, not to exceed 90 days after sentencing,' . . . the Supreme Court has explained

that 'the statute seeks primarily to assure that victims of a crime receive full restitution,' and not 'to

provide defendants with certainty as to the amount of their liability.'" United States v. Schwamborn,

467 F. App'x 35, 37 (2d Cir. 2012) (citations omitted, quoting Dolan v. United States, 130 S. Ct.

2533, 2539-40 (2010)).  "[A] sentencing court that misses the 90-day deadline nonetheless retains

the power to order restitution . . . where . . . the sentencing court made clear prior to the deadline's

expiration that it would order restitution, leaving open (for more than 90 days) only the amount."

Dolan v. United States, 130 S. Ct. at 2537.

        While there has been a significant delay in determining the restitution issue, Judge

Kaplan at sentencing made clear that restitution would be decided at a later date.  (See Ex. 1-J:

Sentencing Tr. at 47-48.)  The Second Circuit specifically held that "the facts on the record do not

support the district court's finding that the complexity of fashioning an award of restitution would

further complicate and prolong the sentence so that the burden on the sentencing process outweighs

any need to provide restitution to which South Africa is entitled." United States v. Bengis, 631 F.3d

33, 41 (2d Cir.), cert. denied, 131 S. Ct. 2911 (2011); see also page 3 above.  The delay in this case

was due to:  (1) lengthy and unsuccessful restitution settlement negotiations from at least December

2004 to May 2006 (Ex. 4: 5/20/05 Conf. Tr. at 57-60; Ex. 5: 4/7/06 Conf. Tr. at 2-11; Ex. 6: 5/19/06

Conf. Tr. at 2-13; Ex. 9: Gov't VWPA Br. at 19 n.8; Dkt. No. 201: Gov't Reply Br. at 22); (2) the

almost four years while the case was on appeal, i.e., between Judge Kaplan's September 12, 2007

Order, the Second Circuit's decision on January 4, 2011 and the Supreme Court's denial of certiorari

on May 23, 2011 (see Gov't Reply Br. at 22; pages 2-3 above); (3) defendants' post remand request

for more time to try to settle the restitution issue (see Dkt. No. 176: 7/8/11 Order); and (4) the time

for the Court to review defendants' prior counsel's motions to withdraw and for the Government to renew its motion for restitution (Gov't Reply Br. at 22).  As the Supreme Court has explained, the "Act's efforts to secure speedy determination of restitution is <u>primarily</u> designed to help victims of crime secure prompt restitution rather than to provide defendants with certainty as to the amount of their liability."  <u>Dolan</u> v. <u>United States</u>, 130 S. Ct. at 2539-40.[11]/  The delays here should not provide a basis for defendants to avoid their restitution obligation.

C.    **Schedule of Payments**

"In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant."  18 U.S.C. § 3664(f)(1)(A).[12]/

The Court shall consider the factors set forth in 18 U.S.C. § 3664(f)(2)(A)-(C) in determining "the manner in which, and the schedule according to which, the restitution is to be paid."  18 U.S.C. § 3664(f)(2)(A)-(C).  "The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant."  18 U.S.C. § 3664(e); <u>see</u>, <u>e.g.</u>, <u>United States</u> v. <u>Schwamborn</u>, 467 F. App'x at 37 ("The defendant bears the burden of demonstrating his financial resources and the financial needs of his dependents . . . .").

Defendants were ordered to submit updated financial affidavits to the Court by July 6, 2012.  (Dkt. No. 193: 6/4/12 Order.)  Defendants failed to do so.  Because defendants bear the

---

[11]/     <u>Accord</u>, <u>e.g.</u>, <u>United States</u> v. <u>Schwamborn</u>, 467 F. App'x at 37; <u>United States</u> v. <u>Pickett</u>, 612 F.3d 147, 149 (2d Cir. 2010).

[12]/     <u>Accord</u>, <u>e.g.</u>, <u>United States</u> v. <u>Schwamborn</u>, 467 F. App'x 35, 37 (2d Cir. 2012); <u>United States</u> v. <u>Anderson</u>, 419 F. App'x 16, 18 (2d Cir. 2011); <u>United States</u> v. <u>Qurashi</u>, 634 F.3d 699, 702 (2d Cir. 2011).

burden of establishing their financial resources as well as the financial needs of their dependents, the Court recommends that defendants be ordered to pay restitution immediately.

### D.   Joint And Several Liability

"It has long been the law of this circuit that the restitution obligation may be ordered to be joint and several." United States v. Nucci, 364 F.3d 419, 422 (2d Cir. 2004).[13/]  Defendants assert that the Court should be more lenient to David Bengis because he was still in high school in 1987 and did not graduate from college until 1992.  (Dkt. No. 205: Defs. Surreply Br. at 8.)  Despite defendants' assertions, David Bengis' plea agreement letter and plea hearing both use 1987 to 2001 as the time period of the conspiracy with which he was charged and pled guilty.  (See Ex. 1-F: D. Bengis Plea Agmt. Ltr. at 1; 1-I: D. Bengis Plea Tr. at 4-5.)  David Bengis' Presentence Report used 1984 as the start date, and he only objected that "'1984' should be changed to '1987.'" (Ex. 14: D. Bengis PSR Objections at 1; see Dkt. No. 201: Gov't Reply Br. at 8.)  Under the MVRA, the Court may make "restitution payable by all convicted co-conspirators in respect of damage suffered by all victims of a conspiracy, regardless of the facts underlying counts of conviction in individual prosecutions." United States v. Boyd, 222 F.3d 47, 50 (2d Cir. 2000); see, e.g., United States v. Zangari, 677 F.3d at 96-97 (Defendant "could have been held liable, jointly and severally, for all the losses suffered by the victims during the course of the conspiracy, not merely those directly tied to his actions."); Lee v. United States, 05 Cr. 5844, 2007 WL 1987868 at *6 (S.D.N.Y. July 9, 2007)

---

[13/]   "If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h); see, e.g., United States v. Zangari, 677 F.3d 86, 96 (2d Cir. 2012); United States v. Aumais, 656 F.3d 147, 156 (2d Cir. 2011); United States v. Tzakis, 736 F.2d 867, 871 (2d Cir. 1984).

("Petitioner was not held responsible for the entire conspiracy, though the district court appears to have had authority to do so . . . .").

Accordingly, the restitution order should be entered against Arnold Bengis, Jeffrey Noll and David Bengis, jointly and severally.

## CONCLUSION

For the reasons discussed above, the Court should order defendants Arnold Bengis, Jeffrey Noll and David Bengis, jointly and severally, to pay restitution of $54,883,550 to South Africa.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.[14]  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 2240, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Kaplan (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human

---

[14]    If the pro se defendants require copies of any of the cases reported only in Westlaw, defendants should request copies from plaintiff's counsel.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009); SDNY-EDNY Local Civil Rule 7.2.

20

Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988);

McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

DATED:      New York, New York
            August 16, 2012

                                                _____
                                                **Andrew J. Peck**
                                                United States Magistrate Judge

Copies to:   Arnold Maurice Bengis (Email)
             Jeffery Noll (Email)
             David Bengis (Email)
             AUSA Daniel Levy (ECF)
             Judge Lewis A. Kaplan